1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Defendant Merchant Industry LLC

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

**ABANTE ROOTER AND PLUMBING, INC.**, a California corporation, individually and on behalf of all others similarly situated,

      Plaintiff,

      v.

**UNLOCKED BUSINESS STRATEGIES, INC.**, et al.,

      Defendants.

Case No. 4:19-cv-07966-JST

**DEFENDANT MERCHANT INDUSTRY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(2); MEMORANDUM OF POINTS AND AUTHORITIES**

Date:     In Chambers
Time:    In Chambers
Before:  The Hon. Jon S. Tigar
Ctrm:   6, 2nd Flr.

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, in chambers, pursuant to The Hon. Jon S. Tigar's Scheduling Notes, in the above-titled Court, in Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, California 94612, Defendant Merchant Industry LLC ("Defendant") will and hereby does move this Court to dismiss Plaintiff's Second Amended Class Action Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

The Court should grant Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) because there is no case or controversy where Plaintiff does not have Article III standing to bring this action.

The Court should grant Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) because Plaintiff has not alleged and cannot show that Defendant's suit-related actions, if any, created a substantial connection with California.

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities and declaration, the pleadings and other papers on file in this action, and any other evidence that may be offered at a hearing if necessary.

Respectfully Submitted,

Dated: September 18, 2020          **KRONENBERGER ROSENFELD, LLP**

By:   s/ Karl S. Kronenberger
         Karl S. Kronenberger

Attorneys for Defendant Merchant Industry LLC

1

**DEFENDANT'S NTC OF MTN AND MTN TO DISMISS; MPA**

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff seeks to hale Merchant Industry LLC d/b/a Swipe4Free ("Merchant Industry"), a New York company, into the Northern District of California to defend against a class action on the slimmest of jurisdictional grounds: a single email sent by a third party that had no contractual relationship with Merchant Industry and was not authorized to communicate or otherwise act on behalf of Merchant Industry. Merchant Industry has no employees, offices, or accounts in California. It did not contact or otherwise interact with Plaintiff, let alone in California. Moreover, it has no other systematic or minimum contacts with California that might allow this Court to exercise personal jurisdiction consistent with the Due Process Clause of the U.S. and California Constitutions.

Thus, given the absence of contacts between Merchant Industry and California, the Court should dismiss the SAC for lack of personal jurisdiction or, in the alternative, for lack of standing.

### BACKGROUND

Merchant Industry sells point of sale and merchant processing systems that other businesses can use to accept credit and debit card payments. (SAC ¶8.) Plaintiff alleges that Merchant Industry is liable to it and the rest of the putative class for violation of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq*. However, Plaintiff fails to allege facts to support, and Plaintiff cannot amend its pleading with any facts showing, that this Court has personal jurisdiction over Merchant Industry.

As Plaintiff concedes, Merchant Industry is a New York limited liability company with a principal place of business in New York. (SAC ¶2.) It does not have any offices, employees, mailing addresses, phone numbers, real estate, licenses, or computer servers in California. (Declaration of Frank Kotlar in support of Motion to Dismiss ("Kotlar Decl.") ¶2.) Frank Kotlar, its chief financial officer, is also a New York resident, and he does not own any California assets, California bank accounts, or California property. (Kotlar Decl. ¶3.)

1

The SAC does not allege a <u>single</u> action or agreement by Merchant Industry that took place in the State of California. Indeed, it fails to identify <u>any</u> conduct specific to Merchant Industry at all, let alone conduct that would give rise to specific jurisdiction over this New York company. Instead, the SAC alleges that Merchant Industry should be haled into the Northern District of California because a third party or its agent, Unlocked Business Strategies, Inc. and Thomas Costa (collectively, "UBS"), sent <u>one</u> email in which a UBS agent claimed that UBS was an affiliate of Merchant Industry (SAC ¶28), which was absolutely false. (Kotlar Decl. ¶4.) The other alleged contacts (three phone calls) the SAC alleges were made by "Defendants," but not by Merchant Industry specifically—nor does Plaintiff allege that these calls referenced Merchant Industry at all. (SAC ¶26.) Indeed, the only Defendant that Plaintiff directly names in association with these calls is UBS. (SAC ¶26(c) "[Plaintiff] spoke to an agent of UBS.") Despite the implications in the SAC, Merchant Industry has and had no contractual relationship, or other agreement, with the other Defendants, and thus other Defendants were not in any way authorized to offer the services of Merchant Industry; to promote or market the services of Merchant Industry; or to use Merchant Industry's trademarks in any way. (Kotlar Decl. ¶5.)

While the SAC is riddled with conclusory allegations alleging that Merchant Industry "knew about the calls, received the benefits of the calls, directed the calls to be made, and/or ratified the calls" (SAC ¶12), it offers no factual support for the connection it claims exists between Merchant Industry and UBS. The Plaintiff does not (nor indeed can it) point to any agreement between Merchant Industry and UBS to engage in the alleged activity, as there was no agreement. (Kotlar Decl. ¶4.) In fact, Merchant Industry did not receive the benefit of any calls or emails sent by UBS, direct any calls to be made or emails to be sent by UBS, or ratify the calls, emails, or other actions of UBS. (Kotlar Decl. ¶4.) UBS and Merchant Industry do not share common ownership. (Kotlar Decl. ¶4.) Merchant Industry does not exercise control over UBS, and there is no legal relationship at all between the companies. (Kotlar Decl. ¶4.) Merchant Industry knows of no relationship between the other Defendants and any authorized reseller or affiliate of

Merchant Industry. (Kotlar Decl. ¶4.) In short, Plaintiff alleges no facts which support its claims that Merchant Industry ever knew about, ratified, or directed UBS's conduct, as those allegations would be untrue.

**ARGUMENT**

**1.** **This Court lacks personal jurisdiction over Merchant Industry because Merchant Industry is not at home in California and Plaintiff has not alleged that its claims arise out of Merchant Industry's contacts with the forum.**

To establish personal jurisdiction over a non-resident, a federal court must determine (1) that personal jurisdiction is permitted by the local long-arm statute, and (2) that the exercise of that jurisdiction does not violate federal due process. *See, e.g.*, *Fireman's Fund Ins. Co. v. Nat. Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996). Section 410.10 of the California Code of Civil Procedure permits California courts to exercise jurisdiction on any basis not inconsistent with state or federal constitutional principles. *See id.* The effect of this statute is to allow state courts, as well as federal courts, to exercise personal jurisdiction on any basis allowable under the State and United States Constitutions. *See Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 398 (9th Cir. 1981).

A defendant may be subject to either general or specific personal jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). However, neither applies here, and for that reason Plaintiff's claims against Merchant Industry should be dismissed.

**a.** **General jurisdiction over Merchant Industry does not exist.**

General jurisdiction exists where the defendant's contacts with the forum state are so "systematic and so continuous as to make it consistent with traditional notions of fair play and substantial justice to subject the defendant to the jurisdiction of the forum, even where the cause of action is unrelated to the contacts." *Calvert v. Huckins*, 875 F. Supp. 674, 677 (E.D. Cal. 1995). For example, general jurisdiction exists if a defendant is domiciled in the forum state. *See Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 445 (1952). Put another way, general jurisdiction only applies when a defendant's contacts

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

1   with the forum state are "so continuous and systematic as to render it essentially at home."

2   *Daimler*, 571 U.S. at 138.

3       Here, it is undisputed that Merchant Industry is a New York company. (SAC ¶7.)

4   Its principal place of business is in New York. (SAC ¶7.) In short, it is not "at home" in

5   California, and this Court therefore lacks general jurisdiction over Merchant Industry.

6       **b.   Specific jurisdiction over Merchant Industry does not exist.**

7       Specific jurisdiction exists where the defendant's contacts with the forum state,

8   though not enough to subject the defendant to the general jurisdiction of the forum, are

9   sufficient to subject the defendant to suit in the forum on a cause of action related to or

10  arising out of those contacts. *See, e.g.*, *AT & T Co. v. Compagnie Bruxelles Lambert*, 94

11  F.3d 586, 588 (9th Cir. 1996). The Ninth Circuit applies a three-part test to determine if a

12  defendant's activities are sufficiently related to the forum state to establish specific

13  jurisdiction: (1) The nonresident defendant must do some act or consummate some

14  transaction with the forum or perform some act by which he purposefully avails himself of

15  the privilege of conducting activities in the forum, thereby invoking the benefits and

16  protections of its laws; (2) the claim must be one which arises out of or results from the

17  defendant's forum-related activities; and (3) the exercise of jurisdiction must be

18  reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

19  The court engages in "purposeful availment" analysis for contract cases and "purposeful

20  direction" analysis for tort cases. *See id.* Its analysis "looks to the defendant's contacts

21  with the forum State itself, not the defendant's contacts with persons who reside there."

22  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  "[T]he plaintiff cannot be the only link between

23  the defendant and the forum." *Id.* at 277.

24      Plaintiff generally alleges that "Defendants" (it does not say which) "[m]ade the

25  calls at issue in this case and directed such calls to cellphone owners in this District."

26  (SAC at ¶2). It does not allege whether there were any specific contacts between

27  Merchant Industry and the State of California, nor how this suit arisess out of or relate to

28  those contacts. (*See, generally*, SAC); *see, e.g.*, *Abedi v. New Age Med. Clinic PA*, No.

1:17-CV-1618 AWI SKO, 2018 WL 3155618, **4–5 (E. D. Cal. 2018 June 25, 2018) (fact that defendant texted plaintiff's cell phone while she lived in California was insufficient for personal jurisdiction where there was no evidence that defendant knew that it was sending text messages into California).

Plaintiff has not alleged any act or transaction by Merchant Industry within California or this District by which Merchant Industry has purposefully availed itself of the privilege of conducting activities in the forum, apart from generally alleging upon information and belief that "Defendants" (again, it is unclear which) "have solicited and entered into business contracts in this District." (SAC ¶2.) This, however, is insufficient to support jurisdiction, particularly where Plaintiff has not alleged how this suit results from those nebulous "business contracts."

c.   **Plaintiff cannot use UBS's actions as a basis for exercising jurisdiction over Merchant Industry.**

Finally, Plaintiff cannot use UBS's actions in making the three phone calls that are at issue in this suit to force Merchant Industry to defend in California because it has failed to allege a sufficient alter ego relationship to support jurisdiction. Historically, the Ninth Circuit allowed plaintiffs to employ either an alter ego test or an agency test to determine whether the exercise of jurisdiction over an out-of-state affiliate was appropriate. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015). However, in *Daimler*, the Supreme Court invalidated this test, holding the test "stack[ed] the deck" by always yielding a pro-jurisdictional answer. *Daimler*, 134 S.Ct. at 759. Instead, courts now use the alter ego test, which allows for the exercise of personal jurisdiction in instances where two companies are "not really separate entities," such that one's conduct can be attributed to another. *Ranza*, 793 F.3d at 1071. In conducting this analysis, the exercise of jurisdiction is only appropriate where there is such a unity of interest and ownership that the separate personalities of the entities no longer exist. *See id.* The fact that agents of one entity claim to have authority to represent another is not sufficient to confer jurisdiction. *See, e.g.*, *Indep. Elec. Supply Inc. v. Solar Installs, Inc.*, No. 4:18-CV-01435-KAW, 2018 WL

5

6092800, at *6 (N.D. Cal. Nov. 21, 2018).

Here, Plaintiff makes no allegations to suggest that UBS and Merchant Industry shared a unity of interest. The only fact that even suggests a relationship between the parties is that UBS apparently represented itself as an "affiliate" of Merchant Industry in its email. (SAC ¶28.) But this is not the case, nor does Plaintiff allege facts which would suggest that it is. Plaintiff alleges no unity of ownership, no unity of control, no commingling of funds or shared bank accounts—nothing, in short, that would permit this Court to exercise personal jurisdiction over Merchant Industry. Indeed, Plaintiff alleges no action <u>whatsoever</u> by Merchant Industry suggesting it is affiliated with UBS; its claims appear to be based solely on UBS's own representations. Therefore, Plaintiff should not be permitted to use this threadbare connection as a basis to force Merchant Industry to defend this suit in California.

Furthermore, there is no legal relationship between Merchant Industry and UBS. There is no contract, no authority to promote Merchant Industry, no authorization to sell Merchant Industry's services, and not even authorization to use Merchant Industry's trademarks. Merchant Industry does not control UBS, and UBS is not any sort of legal or marketing affiliate of Merchant Industry. Frankly, UBS should not have been referencing Merchant Industry or its mark, Swipe4free, in any way. Plaintiff cannot allege a unity of interest for the simple reason that none exists. To the extent UBS represented itself as an agent or affiliate of Merchant Industry's, that representation was false. To predicate jurisdiction on such an unauthorized statement by a third party who was without any actual authority would work a grave injustice on Merchant Industry.

**2.**   <u>**Plaintiff lacks standing to bring suit because it has not been injured.**</u>

Even if Plaintiff could establish that this Court had personal jurisdiction over Merchant Industry, the suit should be dismissed for another reason: Plaintiff lacks standing to sue. A party may move to dismiss an action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing Article III standing. *See Spokeo, Inc.*

*v. Robins*, 136 S. Ct. 1540, 1547 (2016). In effect, a court must presume that it lacks jurisdiction until the plaintiff shows otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A party moving under Rule 12(b)(1) may present either a facial attack or a factual attack based on extrinsic evidence. *See McMorgan & Co. v. First California Mortg. Co.*, 916 F. Supp. 966, 973 (N.D. Cal. 1995). In ruling on a factual attack, the court need not presume the truthfulness of the plaintiff's allegations. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Rather, a court can consider extrinsic evidence and weigh the evidence to satisfy itself as to its power to hear the case. *See Durham v. Prudential Ins. Co. of Am.*, 236 F. Supp. 3d 1140, 1148 (C.D. Cal. 2017). Where the facts are controverted or credibility issues are raised, the court *may* order an evidentiary hearing. *See Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

To have standing under Article III, a plaintiff must establish three facts: it "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. The first element is the "foremost" of the three. *Id*., quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). To establish standing, an injury in fact must be concrete. *See id*. at 1548. "A 'concrete' injury must be 'de facto'; that is, it must actually exist," as opposed to being hypothetical or speculative. *Id*. This is true "even in the context of a statutory violation." *Id*. at 1549. "[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). The injury must also be particularized, that is, affecting the plaintiff "in a personal and individual way." *Spokeo*, 136 S. Ct at 1548. As the would-be class representative, Plaintiff must establish its own personal, concrete injury notwithstanding whatever injuries may have been suffered by the other members of the putative class. *Id*. at 1547.

Here, Plaintiff contends that it has standing because it received one email—one—from a third party purporting to be a Merchant Industry affiliate. (SAC ¶28.) None of the

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1    other contacts alleged in the SAC are even alleged to have referenced Merchant Industry.

2    This renders the present case distinguishable from *Van Patten v. Vertical Fitness Grp.,*

3    *LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding telemarketing text messages and phone

4    calls, by nature, "invade the privacy and disturb the solitude of their recipients.").

5    Specifically, Plaintiff does not actually attribute any <u>calls or text messages</u> to Merchant

6    Industry in the SAC—it only points to one solitary email. In fact, in *Van Patten*, the Ninth

7    Circuit specified that "[t]he TCPA establishes the substantive right to be free from <u>certain</u>

8    <u>types of phone calls and texts</u> absent consumer consent." *Id.* at 1043 (emphasis added).

9    But a plaintiff cannot assert "a bare procedural violation, divorced from any concrete

10   harm, and satisfy the injury-in-fact requirement of Article III." *Bassett v. ABM Parking*

11   *Servs., Inc.*, 883 F.3d 776, 781 (9th Cir. 2018).

12         Emails fundamentally differ from phone calls and texts in several key ways. First,

13   receiving an email does not restrict a phone's ability to make or receive other calls.

14   Second, unlike with the receipt of a call or text, the receipt of an email (and, in particular,

15   a marketing email) rarely if ever even results in a direct notification. Third, unlike with a

16   call or text, the recipient of an email has the ability to review the subject line and sender

17   information before deciding whether to spend the time to read a given email. In short, an

18   email is far less invasive or intrusive than a call or text message. Here, Plaintiff has not

19   alleged any particularized injury associated with the email, instead tying its damages to

20   the calls it allegedly received from UBS. (*See* SAC ¶36.) Yet it brings claims against

21   Merchant Industry by apparently suggesting (falsely and without a basis) that the calls it

22   received but did not answer from UBS were at the behest of or approved by Merchant

23   Industry. This is an insufficient basis to support standing, and for that reason, the claims

24   against Merchant Industry set forth in the SAC should be dismissed.

## CONCLUSION

26         In essence, Plaintiff's claims against Merchant Industry are based entirely upon a

27   connection it attempts to forge (without factual support) between Merchant Industry and

28   UBS. Apart from that purported relationship, it can point to no contacts within California

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

that would justify the exercise of jurisdiction. Yet forcing Merchant Industry, a New York company, to defend a claim in the Northern District of California based upon <u>one email</u> in which a third party falsely claimed to be an affiliate of Merchant Industry defies due process. In the absence of any evidence supporting the relationship between UBS and Merchant Industry—or indeed even supporting the suggestion that Merchant Industry was <u>aware</u> that UBS was emailing California customers on its behalf—this Court should dismiss Plaintiff's claims against Merchant Industry for lack of personal jurisdiction. In the alternative, where Plaintiff has failed to identify any concrete injury it suffered as a result of receiving the email that is at issue in this suit (and where it does not even allege that the calls it received referenced Merchant Industry), the Court should dismiss Plaintiff's claims against Merchant Industry for lack of standing.

Respectfully Submitted,

Dated: September 18, 2020         **KRONENBERGER ROSENFELD, LLP**


By:   s/ Karl S. Kronenberger
              Karl S. Kronenberger

Attorneys for Defendant Merchant Industry LLC