Steven L. Weinstein
steveattorney@comcast.net
P.O. Box 27414
Oakland, CA 94602
Tel: (510) 336-2181

Patrick H. Peluso
ppeluso@woodrowpeluso.com*
Taylor T. Smith
tsmith@woodrowpeluso.com*
**WOODROW & PELUSO, LLC**
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Pro Hac Vice*

*Attorneys for Plaintiff and the Classes*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| **ABANTE ROOTER AND PLUMBING, INC.,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**UNLOCKED BUSINESS STRATEGIES, INC.** a New York corporation, **THOMAS R. COSTA**, an individual, and **MERCHANT INDUSTRY, LLC d/b/a SWIPE4FREE**, a New York limited liability company,<br><br>Defendants. | Case No. 4:19-cv-07966-JST<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MERCHANT INDUSTRY LLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(2)**<br><br>Date: In Chambers<br>Time: In Chambers<br>Judge: Hon. Jon S. Tigar<br>Courtroom: 6, 2nd Floor |

1

## **TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ................................................................... iv

3   I.       INTRODUCTION ..................................................................... 1

4   II.      STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................. 2

5   III.     ARGUMENT .......................................................................... 3

6            A.       The Court Possesses Specific Jurisdiction Over Merchant Industry............4

7                     1.       As An Initial Matter, This Court May Properly Exercise Personal

8                              Jurisdiction Over The Claims Asserted Against Merchant Industry Based

9                              On The Actions Of Its Agent……………………………………………4

10                    2.       Merchant Industry, through the actions of UBS, repeatedly

11                             directed its telemarketing activities to Plaintiff in the State of California

12                             to establish sufficient minimum contacts with the State………………………7

13                             a.  Merchant Industry, by and through its agent, purposefully directed

14                                 telemarketing calls to Plaintiff for the purpose of engaging in business in

15                                 the State of California…………………………………………………11

16                             b.  Plaintiff's claims arise out of Merchant Industry's actions in the

17                                 forum……………………………………………………………12

18                             c.  Exercise over the claims is reasonable……………………….....………13

19

20                    3.       Should the Court find that it lacks jurisdiction to hear the claims

21                             asserted against Merchant Industry, Plaintiff should be granted leave to

22                             conduct jurisdictional discovery……………………………………………14

23

24           B.       By Alleging The Receipt Of Unsolicited Calls In Violation Of The TCPA,

25                    Abante Has Alleged A Concrete Injury Sufficient To Establish

26                    Standing………………………………………………………….……15

27

28   Plaintiff's Opposition to                              ii
     motion to dismiss

1
2
**IV.    CONCLUSION**…………………………………………………………………………………..**17**
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**<u>TABLE OF AUTHORITIES</u>**

2  *Baker v. Caribbean Cruise Line, Inc.*,

3        No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014)……………9

4  *Campanelli v. Image First Unif. Rental Serv., Inc.*,

5        No. 15-CV-04456-PJH, 2016 WL 4729173, at *6 (N.D. Cal. Sept. 12, 2016)……………4

6  *Daimler AG v. Bauman*, 571 U.S. 117 (2014)…………………………………………………….4

7  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)………………………...7, 8, 10

8  *Fishman v. Subway Franchisee Advert. Fund Tr., Ltd.*,

9        No. 219CV02444ODWASX, 2019 WL 6135030, at *2 (C.D. Cal. Nov. 19, 2019)...*passim*

10 *Heidorn v. BDD Marketing & Management Company, LLC*,

11        Case No. C–13–00229 JCS, 2013 WL 6571629, 8 (N.D. Cal. August 19, 2013)…………8

12 *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019)…………………….5

13 *Hudak v. Berkley Group, Inc.*,

14        No. 3:13–cv–00089–WWE, 2014 WL 354676, at *3 (D. Conn. January 23, 2014)……....8

15 *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)…….3

16 *j2 Glob. Commc'ns, Inc. v. Blue Jay, Inc.*,

17        No. C 08-4254 PJH, 2009 WL 29905, at *10 (N.D. Cal. Jan. 5, 2009)………………..8, 10

18 *Komaiko v. Baker Techs., Inc.*,

19        No. 19-CV-03795-DMR, 2020 WL 1915884, at *6 (N.D. Cal. Apr. 20, 2020)…….8 ,9, 11

20 *Lofton v. Verizon Wireless (VAW) LLC*,

21        No. 13-CV-05665-YGR, 2015 WL 1254681, at *3 (N.D. Cal. Mar. 18, 2015)…………...5

22 *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978)……………………………3

23 *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1058 (D. Or. 2014)…………………...11

24 *Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*,

25        No. C13-01347-JCC, 2014 WL 12103245, at *2 (W.D. Wash. Nov. 4, 2014)………..8, 10

26 *Sasin v. Enter. Fin. Grp., Inc.*,

27

28  <span style="font-variant:small-caps">Plaintiff's Opposition to<br>motion to dismiss</span>                    iv

No. CV 17-4022-CBM-RAO, 2017 WL 10574367 (C.D. Cal. Nov. 21, 2017)..............10

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)...................3, 7

*Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990)...............................................................3

*Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir.1988).............................8

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)......................................13

*Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995)......................................9

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017).......................13, 14

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017)..........................4, 7

## STATUTES, RULES, SECONDARY SOURCES

FCC Declaratory Ruling, *DISH Network, et al.*, 28 FCC Rcd 6574 (8), (2013) ................. *passim*

Restatement (Third) of Agency § 1.01 (2006).....................................................................*passim*

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ........................................... *passim*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        This case challenges Defendants Unlocked Business Strategies, Inc.'s ("UBS"), Thomas

4   Costa's ("Costa"), and Merchant Industry, LLC's  d/b/a Swipe4Free ("Merchant Industry")

5   (collectively "Defendants") serial violations of the Telephone Consumer Protection Act, 47

6   U.S.C. § 227, *et seq.* ("TCPA" or Act")—specifically, the Act's bar against making unsolicited

7   autodialed calls to cellular telephones. Seeking an early exit, Merchant Industry contends that this

8   Court lacks personal jurisdiction over the claims asserted and that Plaintiff lacks standing to sue.

9   Both arguments fall apart.

10        Merchant Industry's central argument—that the Court lacks personal jurisdiction over the

11  claims asserted—is grounded primarily on the contention that specific jurisdiction cannot be

12  premised on an agency relationship. This is incorrect. In this case, UBS, acting on behalf of or for

13  the benefit of Merchant Industry, directed five calls into this State to solicit Plaintiff to purchase

14  Merchant Industry's products and services. This is sufficient to confer specific jurisdiction over

15  the claims asserted against Merchant Industry, and to the extent any outstanding questions

16  remains, the Court should either deny the motion without prejudice to re-filing or permit Plaintiff

17  to engage in jurisdictional discovery.

18        Merchant Industry alternatively argues that Plaintiff lacks standing because it failed to

19  allege a concrete injury. To hear Merchant Industry tell it, Plaintiff's only damages are the single

20  email communication it received soliciting it to purchase Merchant Industry's products and

21  services. This argument misconstrues Plaintiff's allegations. Here, Plaintiff alleged that it

22  received five (5) unsolicited, autodialed calls in violation of the TCPA. Each of the calls solicited

23  Plaintiff to purchase Merchant Industry's products and services. By alleging the receipt of

24  unsolicited calls in violation of the TCPA, Plaintiff has alleged a concrete injury.

25        As explained below, Plaintiff sufficiently plead facts demonstrating that this Court

26  possesses specific jurisdiction over the claims asserted against Merchant Industry. As such,

27

28  PLAINTIFF'S OPPOSITION TO                          1
    MOTION TO DISMISS

1    Merchant Industry's motion should be denied.

2    **II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

3            Defendant Merchant Industry sells point of sale (hereafter referred to as "POS") and

4    merchant processing systems, i.e. credit card scanners and other POS systems that businesses can

5    use to accept credit and debit card payments. (Second Amended Complaint ("SAC"), Dkt. 25 ¶ 8.)

6    To generate sales, Merchant Industry works with partners or agents to sell its products. (SAC ¶ 9.)

7    Defendant UBS is a telemarketer that targets consumers and businesses to sell Merchant

8    Industry's products and services—namely its POS and merchant processing systems. (*Id.* ¶ 10.) In

9    doing so, UBS placed telemarketing calls *en masse* to consumers and businesses using an

10   automatic telephone dialing system ("ATDS")—a plain violation of the TCPA. (*Id.* ¶¶ 15-16.) For

11   his part, Defendant Costa oversaw, controlled, and directed all actions of UBS, including its

12   telemarketing activities. (*Id.* ¶ 11.)

13           In Plaintiff Abante's case, it received multiple telephone calls from Defendants UBS and

14   Costa. (SAC ¶ 26.) On August 27, 2019, Plaintiff received three autodialed calls from the

15   telephone number 888-824-6643 directed to its cellular telephone. (*Id.*) On August 28, 2019,

16   Plaintiff received two additional autodialed calls from the telephone number 888-824-6643

17   directed to its cellphone. (*Id.*) All of the calls were placed for the purpose of soliciting Plaintiff to

18   purchase Merchant Industry's products and services. (*Id.* ¶¶ 10, 12-13, 50.) Further, Plaintiff

19   never provided any prior express written consent to any Defendant to be called, nor does it have

20   any prior business relationship with Defendants. (*Id.* ¶ 30.)

21           Following the August 28, 2019 call, Plaintiff received a follow-up email from Ritchie

22   Smyth. (SAC ¶ 28; *see also* Declaration of Taylor T. Smith ("Smith Decl.") ¶ 4, a true and

23   accurate copy of which is attached hereto as Group Exhibit A.) Mr. Smyth explained that he was

24   working with UBS who was an "affiliate" of Merchant Industry, and attached brochures to the

25   email, which advertised Merchant Industry's products and services. (SAC ¶ 28; *see also* UBS

26   Emails, true and accurate copies of which are attached as Exhibit 1 to the Smith Decl.) Mr. Smyth

27

28   PLAINTIFF'S OPPOSITION TO                           2
     MOTION TO DISMISS

1    again solicited Plaintiff to purchase Merchant Industry's products and services explaining that

2    Merchant Industry would render all customer service product management, and services. (*Id.*) Mr.

3    Smyth told Plaintiff to "[t]hink of [UBS] as a Franchisee of Merchant Industry." (*Id.*) During

4    another follow-up email, Mr. Smyth explained Merchant Industry's relationship with processors:

5    TSYS, First Data, and Clover POS. (*See* Exhibit 1 to Smith Decl.)

6          Based on these facts and as explained below, the Court should deny Defendant Merchant's

7    Motion to Dismiss.

8    **III.    ARGUMENT**

9    **A.    The Court Possesses Specific Jurisdiction Over Merchant Industry.**

10         Once dismissal is sought under Rule 12(b)(2), "the plaintiff bears the burden of

11   demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374

12   F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990)). When

13   a 12(b)(2) motion is based on written material, as opposed to an evidentiary hearing, "the plaintiff

14   need only make a prima facie showing of jurisdictional facts." *Id. "*For a court to exercise

15   personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum

16   contacts" with the relevant forum such that the exercise of jurisdiction "does not offend

17   traditional notions of fair play and substantial justice.'" *Id.* at 801 (citing *International Shoe Co. v.*

18   *Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

19         In making the determination, "uncontroverted allegations in the complaint must be taken

20   as true" and "[f]actual disputes are resolved in the plaintiff's favor." *Fishman v. Subway*

21   *Franchisee Advert. Fund Tr., Ltd.*, No. 219CV02444ODWASX, 2019 WL 6135030, at *2 (C.D.

22   Cal. Nov. 19, 2019) (citations omitted). To the extent that factual questions need to be resolved

23   regarding the nature of the Court's jurisdiction or any contacts or relationships Merchant Industry

24   or its agents have with the forum, the Supreme Court has held that "discovery is available to

25   ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351

26   n. 13 (1978).

27

28

As explained below, Merchant Industry—through its agent, UBS—directed calls to solicit Plaintiff to purchase its POS and merchant processing systems for use in the State of California. This is sufficient to confer specific jurisdiction. However, to the extent the Court has questions regarding its ability to hear the case, Plaintiff has proffered sufficient evidence to warrant jurisdictional discovery.

1.      **As An Initial Matter, This Court May Properly Exercise Personal Jurisdiction Over The Claims Asserted Against Merchant Industry Based On The Actions Of Its Agent.**

Underlying Merchant Industry's motion is the erroneous contention that the actions of UBS cannot be attributed to it for the purpose of personal jurisdiction. (Def. Mot. at 5-6.) That is, relying on *Daimler AG v. Bauman*, 571 U.S. 117 (2014), Merchant Industry claims that the Supreme Court invalidated the agency test for the purposes of specific jurisdiction. (*Id.* at 5.) Instead, Merchant Industry asserts that Plaintiff must use the "alter ego" test and that "the exercise of jurisdiction is only appropriate where there is such a unity of interest and ownership that the separate personalities of the entities no longer exist." (*Id.*) Merchant Industry is mistaken. The Supreme Court invalidated the agency test with respect to general jurisdiction (not specific jurisdiction).

Indeed, the Ninth Circuit has indicated that agency "continues to be 'relevant to the existence of specific jurisdiction,'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014)). For jurisdiction to attach on the basis of agency, Plaintiff must "allege a prima facie case of an agency relationship." *See Fishman v. Subway Franchisee Advert. Fund Tr., Ltd.*, No. 219CV02444ODWASX, 2019 WL 6135030, at *4 (C.D. Cal. Nov. 19, 2019) (citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017)); *see also Campanelli v. Image First Unif. Rental Serv., Inc.*, No. 15-CV-04456-PJH, 2016 WL 4729173, at *6 (N.D. Cal. Sept. 12, 2016) (refusing to exercise specific jurisdiction where plaintiff failed to make out a "prima facie case of an agency relationship").

Where a plausible agency relationship is alleged, personal jurisdiction may be premised on the agent's contacts with the forum. *See Fishman*, 2019 WL 6135030, at *5 ("Fishman plausibly pleads an agency relationship between Subway and T-Mobile. Consequently, the Court may premise its personal jurisdiction over Subway on T-Mobile's contact with the forum.").

Plaintiff has alleged sufficient facts to make out a prima facie case of an agency relationship between UBS and Merchant Industry. "Under the TCPA, a defendant may be held vicariously liable for calls it does not directly initiate "under federal common law principles of agency." *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-CV-05665-YGR, 2015 WL 1254681, at *3 (N.D. Cal. Mar. 18, 2015). Thus, an agency relationship can be established by actual authority, apparent authority, and/or ratification. *See Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019). Apparent authority arises where a principal's "manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation." *Fishman*, 2019 WL 6135030, at *5. On the other hand, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Henderson*, 918 F.3d at 1073. Notably, "ratification creates consequences of actual authority, including, in some circumstances, creating an agency relationship when none existed before." *Id.* "Whether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship and not based on how the parties define their relationship." *Id.* (citing Restatement (Third) of Agency, §§1.02.).

Here, UBS directed five (5) calls to Plaintiff on behalf of Merchant Industry. Merchant Industry swears that no relationship exists between itself and UBS. (*See* Declaration of Frank Kotlar ("Kotlar Decl."), Dkt. 50-1 ¶¶ 4-5.) Merchant Industry also boldly claims that it didn't receive the benefit of any of UBS's calls, and that UBS has no ***known*** relationship with any of its authorized resellers or affiliates. (*Id.* ¶ 4.) Yet, it fails to explain what efforts were taken to ascertain the veracity of this statement. What is truly unbelievable is the proposition that UBS

1    engaged in a sustained telemarketing campaign to sell exclusively Merchant Industry's POS

2    systems without any compensation.

3           While Merchant Industry disputes that a relationship exists, it does not (and cannot)

4    dispute that the calls solicited Plaintiff to purchase Merchant Industry's POS and merchant

5    processing systems. Further, Merchant Industry does not dispute that UBS's follow-up email

6    included its own brochures and represented that it was an "affiliate" or "franchisee" of Merchant

7    Industry. (SAC ¶ 28; *see also* UBS Emails and Merchant Industry Brochures, attached as Exhibits

8    1 and 2 respectively to the Smith Decl.) Additionally, UBS, in another follow-up email, explained

9    Merchant Industry's role with national payment processors, including TSYS, First Data, and

10   Clover POS. Noticeably, these national processors are the identical processors that Merchant

11   Industry discloses on its webpage. (*See* Merchant Industry Webpage pg. 5, attached as Exhibit 3

12   to Smith Decl.) On top of this, Merchant Industry, via Mr. Kotlar's declaration, concedes that it

13   employs "authorized reseller[s] and affiliate[s]." (Kotlar Decl. ¶ 4.) And a quick review of its

14   webpage reveals that Merchant Industry aggressively seeks out third-parties to sell its POS

15   systems. (*See* Merchant Industry Webpage, attached as Exhibit 3 to Smith Decl.) Whether UBS

16   acted with apparent authority (through an agreement with another agent of Merchant Industry) or

17   whether Merchant Industry ratified the calls by accepting the benefit of the calls requires

18   additional discovery to ascertain. However, at this juncture, Plaintiff isn't required to identify the

19   complete relationship. Rather, Plaintiff need only allege a prima facie agency relationship. Taken

20   together, the facts demonstrate that UBS, in making the calls, was acting as an agent of Merchant

21   Industry.

22          Added to this, counsel for UBS and Costa have reached out to Plaintiff's counsel and have

23   agreed to informally exchange some information about the calls. (Smith Decl. ¶ 8.) Relevant here,

24   UBS and Costas's counsel revealed the presence of a third-party lead generation company, which

25   has not yet been identified. (*Id.* ¶ 9.) Further information will likely clarify the relationship

26   between UBS and Merchant Industry. Yet, it is entirely possible that this lead generator may have

27

28   PLAINTIFF'S OPPOSITION TO                        6
     MOTION TO DISMISS

1    an agreement, contractual or otherwise, with Merchant Industry. Ultimately, there are too many

2    connections between the calls at issue and Merchant Industry—dismissal absent discovery on the

3    matter is therefore unwarranted.

4         Because Plaintiff has alleged a prima facie agency relationship, UBS's actions can be

5    attributed to Merchant Industry for the purpose of specific jurisdiction. As such, the Court should

6    deny this motion. Alternatively, to the extent that this Court has any outstanding questions

7    regarding its ability to hear this case, the Court should either deny the motion without prejudice to

8    re-filing or order jurisdictional discovery.

9         **2.    Merchant Industry, through the actions of UBS, repeatedly directed its**

10             **telemarketing activities to Plaintiff in the State of California to establish**

11             **sufficient minimum contacts with the State.**

12        Ignoring the agency allegations, Merchant Industry argues that this Court lacks specific

13   jurisdiction over the claims asserted against it because none of the actions can be attributed to it.[1]

14   (Def. Mot. at 4-6.) As previously explained, when an agency relationship is plausibly alleged,

15   courts may premise a defendant's personal jurisdiction on the contacts of its agent. *See Fishman*,

16   2019 WL 6135030, at *5. As such, UBS's actions on behalf of Merchant Industry are sufficient to

17   confer jurisdiction over the claims at issue.

18        In the Ninth Circuit, specific jurisdiction exists where: "(1) the defendant either

19   "purposefully direct[s]" its activities or "purposefully avails" itself of the benefits afforded by the

20   forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities;

21   and (3) the exercise of jurisdiction [ ] comport[s] with fair play and substantial justice, i.e., it [is]

22   reasonable." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (quoting *Dole*

23   *Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002)). Plaintiff only bears "the burden of

24   satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

25

26   _____

27   [1] Defendant also asserts (and Plaintiff does not dispute) that this Court lacks general jurisdiction
     over the claims at issue. (Def. Mot. at 3.)

28   <small>PLAINTIFF'S OPPOSITION TO</small>                    7
     <small>MOTION TO DISMISS</small>

797, 802 (9th Cir. 2004). Once Plaintiff has satisfied the first two prongs, "a rebuttable presumption arises that the exercise of jurisdiction is reasonable." *j2 Glob. Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 WL 29905, at *10 (N.D. Cal. Jan. 5, 2009) (citing *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir.1988)).

As explained next, the calls at issue were intentionally directed to Plaintiff in the State of California and are sufficient to establish specific jurisdiction.

> **(a)** **Merchant Industry, by and through its agent, purposefully directed telemarketing calls to Plaintiff for the purpose of engaging in business in the State of California.**

Purposeful direction requires "that the defendant allegedly ha[s] (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *6 (N.D. Cal. Apr. 20, 2020) (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "Physical presence in the forum state is not required to confer jurisdiction." *Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*, No. C13-01347-JCC, 2014 WL 12103245, at *2 (W.D. Wash. Nov. 4, 2014).

Notably, courts repeatedly find that an out-of-state defendant (or its agent) who directs its telemarketing activities to individuals in a forum state in violation of the TCPA have purposefully directed its actions at the forum state. *See Fishman*, 2019 WL 6135030, at *5-6 (C.D. Cal. Nov. 19, 2019) (finding that sufficient contacts over Subway based a text message send by its agent T-Mobile.); *j2 Global Communications, Inc. v. Blue Jay, Inc.,* No. C–08–4254–PJH, 2009 WL 29905, at *10 (N.D. Cal. Jan. 05, 2009); *Hudak v. Berkley Group, Inc.,* No. 3:13–cv–00089–WWE, 2014 WL 354676, at *3 (D. Conn. January 23, 2014); *Heidorn v. BDD Marketing & Management Company, LLC,* Case No. C–13–00229 JCS, 2013 WL 6571629, 8 (N.D. Cal. August 19, 2013) (where "the defendant has directed its activities at the forum state by calling the plaintiff without the plaintiff's consent, the TCPA claim arises out of that conduct, and exercise of

jurisdiction is not unreasonable"); *Baker v. Caribbean Cruise Line, Inc.*, No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) ("The Court finds that complaint in this case is sufficient to establish specific jurisdiction, based on the allegation that Defendant made calls to Plaintiff's Arizona number and the fact that those calls are the basis for Plaintiff's claims.").

Here, UBS (acting for the benefit of Merchant Industry) intentionally directed the calls to Plaintiff in the State of California. That is, each of the five (5) calls solicited Plaintiff, a California business, to purchase Merchant Industry's POS and merchant processing systems. By attempting to sell Merchant Industry's systems for use in the State of California, the calls sought to establish an ongoing business relationship with Plaintiff in the forum. Additionally, the calls were directed to Plaintiff's cellular telephone numbers, which contain area codes associated with California. Taken together, the facts sufficiently establish that Defendants purposefully directed their telemarketing activities to the forum State and any harm associated with the calls would foreseeably be suffered in California.

In short, UBS, acting on behalf of Merchant Industry, intentionally targeted its telemarketing activities to the forum State. As such, the Court should find that the first prong is satisfied.

**(b)    Plaintiff's claims arise out of Merchant Industry's actions in the forum.**

While not addressed in Merchant Industry's motion, the second prong asks whether Plaintiff's claim is "one which arises out of or relates to the defendant's forum-related activities." *Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *7 (N.D. Cal. Apr. 20, 2020) (citation omitted). This prong is met if "if 'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995).

Here, Plaintiff's claims arise out of the five (5) unsolicited calls that it received from

1    Defendants. Simply put, but for the calls directed by Defendants, Plaintiff would have suffered no

2    injury. In the context of the TCPA, courts repeatedly find that this prong is satisfied where the

3    forum contacts are the alleged TCPA violations that form the basis of the action. *See Fishman v.*

4    *Subway Franchisee Advert. Fund Tr., Ltd.*, No. 219CV02444ODWASX, 2019 WL 6135030, at

5    *6 (C.D. Cal. Nov. 19, 2019) ("Here, Subway's contact with the forum, the Text Message, is the

6    basis of the alleged TCPA violation. Thus, the Court finds Fishman sufficiently meets her burden

7    of establishing the first two prongs."); *j2 Glob. Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254

8    PJH, 2009 WL 29905 (N.D. Cal. Jan. 5, 2009) ("But for Luxenberg's conduct in creating the fax

9    advertisements and hiring third-party advertisers to broadcast them, j2 would not have been

10   injured in California."); *Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*, No. C13-01347-JCC, 2014

11   WL 12103245, at *2 (W.D. Wash. Nov. 4, 2014) ("But for these calls, Plaintiffs would have

12   suffered no injury."); *Sasin v. Enter. Fin. Grp., Inc.*, No. CV 17-4022-CBM-RAO, 2017 WL

13   10574367 (C.D. Cal. Nov. 21, 2017) ("Plaintiff satisfies the second prong of the specific

14   jurisdiction test because his TCPA claims arise from the alleged phone calls made by

15   Enterprise.").

16       Because Plaintiff's claims arose from Defendants' actions directed to this District, the

17   Court should find that the second prong is met.

18           **(c)     Exercise over the claims is reasonable.**

19       Once Plaintiff satisfies the first two prongs, a defendant must then "present a compelling

20   case that the presence of some other considerations would render jurisdiction unreasonable" in

21   order to defeat personal jurisdiction." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir.

22   2002) (citation omitted). In making this determination, courts balance the following factors: (1)

23   the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on

24   the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

25   defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient

26   judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in

27

28   PLAINTIFF'S OPPOSITION TO                              10
     MOTION TO DISMISS

convenient and effective relief; and (7) the existence of an alternative forum. *Id.* (citation removed). "There is a presumption of reasonableness where the defendant takes actions to 'solicit and obtain business in California.'" *Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *8 (N.D. Cal. Apr. 20, 2020).

Similar to the second prong, Merchant Industry has offered no basis to believe that the exercise of personal jurisdiction is unreasonable. As previously explained, the subject calls were directed to the forum state with the direct purpose of soliciting Plaintiff to purchase Merchant Industry's products and services for use *in California*. (SAC ¶¶ 10, 12-13, 50.) While Merchant Industry will undoubtably have some burden in defending the case, that burden is minimal and cannot be said to be unexpected. That is, Merchant Industry has had to answer for its telemarketing activities in this state on two prior occasions.[2] And advances in technology and telecommunication significantly reduce the burden of litigating in this forum. *See Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1058 (D. Or. 2014). Finally, because this is a TCPA action involving a resident of the forum state, there are no conflicts of laws to consider and this forum has an interest in redressing the injury. *Id.* at 1058-59.

In short, this Court's exercise of jurisdiction is reasonable, and this prong also favors denying Merchant Industry's Motion.

> **3.    Should the Court find that it lacks jurisdiction to hear the claims asserted against Merchant Industry, Plaintiff should be granted leave to conduct jurisdictional discovery.**

To the extent the Court has outstanding questions as to its ability to hear and decide this case, the Court should grant Plaintiff leave to conduct jurisdictional discovery. Indeed, district courts possess broad discretion to permit jurisdictional discovery. *Calix Networks, Inc. v. Wi-Lan,*

---

[2] Merchant Industry has been named as a defendant in two prior TCPA actions in California, including one lawsuit by Plaintiff. *See Abante Rooter and Plumbing Inc v. Merchant Industry, LLC*, Case No. 3:17-cv-04257-JCS (N.D. Cal. filed July 26, 2017); and *Terry Fabricant v. Merchant Industry, LLC*, Case No. 2:19-cv-03313-PSG-JPR (C.D. Cal. filed Apr. 25, 2019).

*Inc.*, No. C-09-06038-CRB DMR, 2010 WL 3515759, at *3 (N.D. Cal. Sept. 8, 2010) ("A district court is vested with broad discretion to permit or deny [jurisdictional] discovery."). Jurisdictional discovery should be granted "where pertinent facts bearing on the question of jurisdiction are controverted ... or where a more satisfactory showing of the facts is necessary." *Focht v. Sol Melia S.A.*, No. C-10-0906 EMC, 2010 WL 3155826, at *1 (N.D. Cal. Aug. 9, 2010). "Indeed, it may be an abuse of discretion for a court to deny jurisdictional discovery where such discovery "might well demonstrate" jurisdictionally relevant facts and the plaintiff is denied the opportunity to develop the jurisdictional record." *Calix*, No. C-09-06038-CRB DMR, 2010 WL 3515759, at *3 (N.D. Cal. Sept. 8, 2010) (collecting cases).

As explained above, specific jurisdiction exists over the claims against Merchant Industry under an agency theory. Plaintiff received five calls soliciting it to purchase Merchant Industry's products and services. Plaintiff then received a follow-up email from UBS, which included Merchant Industry's brochures and again solicited Plaintiff to purchase its products. Nevertheless, the Court may have outstanding questions regarding its ability to hear the case. In that case, Plaintiff should be permitted to conduct jurisdictional discovery. Added to this, counsel for UBS and Costa have now reached out to Plaintiff's counsel regarding this action as well. (*See* Smith Decl. ¶¶ 8-9.) UBS and Costa have confirmed the existence of a third-party lead generation company but has not yet provided the entity's name. (*Id.* ¶ 9.) Thus, it is entirely possible that Merchant Industry has an agreement, contractual or otherwise, with the lead generator. In short, too many factual issues exist to decide categorically that jurisdiction does not exist.

Accordingly, should the Court find additional facts are necessary, it should grant Plaintiff leave to conduct jurisdictional discovery.

**B.     By Alleging The Receipt Of Unsolicited Calls In Violation Of The TCPA, Abante Has Alleged A Concrete Injury Sufficient To Establish Standing.**

Finally, and as an alternative to dismissal for lack of jurisdiction, Merchant Industry argues that Plaintiff lacks standing to sue because it failed to allege an injury in fact. (Def. Mot. at

1   6.) To hear Merchant Industry tell it, the standing analysis should be limited to the harm caused

2   by the email communication because "Plaintiff does not actually attribute any calls or text

3   messages to Merchant Industry in the SAC—it only points to one solitary email." (*Id.* at 8.) This

4   argument misconstrues the allegations.

5          To satisfy Article III standing, Plaintiff must have: "(1) suffered an injury in fact, (2) that

6   is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

7   by a favorable judicial decision." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042

8   (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016)).

9   "A plaintiff establishes injury in fact, if he or she suffered ''an invasion of a legally protected

10  interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

11  hypothetical.'" *Id.* (citing *Spokeo*, 136 S.Ct. at 1548). Moreover, Congress has a "role in elevating

12  concrete, de facto injuries previously inadequate in law 'to the status of legally cognizable

13  injuries.'" *Id.* (citing *Spokeo*, 136 S.Ct. at 1549).

14         Indeed, in enacting the TCPA, "Congress aimed to curb telemarketing calls to which

15  consumers did not consent by prohibiting such conduct and creating a statutory scheme giving

16  damages if that prohibition was violated." *Id.* at 1043. "Unsolicited telemarketing phone calls or

17  text messages, by their nature, invade the privacy and disturb the solitude of their recipients." *Id.*

18  Therefore, "[a] plaintiff alleging a violation under the TCPA 'need not allege any additional harm

19  beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d

20  1037, 1043 (9th Cir. 2017).

21         Plaintiff plainly alleges the receipt of five (5) unsolicited telemarketing calls from

22  Defendants in violation of the TCPA. (SAC ¶¶ 26, 47-57.) Plaintiff also alleged the harms

23  associated with its receipt of unsolicited calls, including aggravation, nuisance, and invasion of

24  privacy. (*Id.* ¶ 36.) Nothing more is needed to satisfy Article III standing. *See Abante Rooter &*

25  *Plumbing, Inc. v. Pivotal Payments, Inc.*, No. 16-CV-05486-JCS, 2017 WL 733123, at *6 (N.D.

26  Cal. Feb. 24, 2017) (collecting cases) ("The vast majority of courts that have addressed this

27

28  <small>PLAINTIFF'S OPPOSITION TO
    MOTION TO DISMISS</small>                    13

question have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury.").

Rather than dispute that the calls establish an injury-in-fact, Merchant Industry attempts to narrow the alleged harm to the receipt of one email claiming that "Plaintiff does not actually attribute any calls or text messages to Merchant Industry." (Def. Mot. at 7-8.) This argument borders on the specious. Plaintiff specifically alleged that all of the calls placed by UBS and Costa were to solicit Plaintiff to purchase Merchant Industry's products and services. (SAC ¶¶ 10-13, 35.) Moreover, Merchant Industry's liability in this action is premised on the calls placed for its benefit. As such, Merchant Industry's attempt to distinguish this case from *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) falls flat.

Given that Plaintiff alleged the receipt of unsolicited calls in violation of the TCPA, the Court should find that it has alleged a concrete injury and deny Merchant Industry's motion.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Merchant Industry's Motion to Dismiss. The calls at issue in this action were directed to Plaintiff in the forum to establish an ongoing business relationship with Merchant Industry in the forum. As such, the Court may properly exercise specific jurisdiction over the claims asserted against Merchant Industry.

Respectfully,

Dated: October 9, 2020

**ABANTE ROOTER AND PLUMBING, INC.**, individually and on behalf of all others similarly situated,

/s/      Patrick H. Peluso
One of Plaintiff's Attorneys

Steven L. Weinstein
steveattorney@comcast.net
P.O. Box 27414
Oakland, CA 94602
Tel: (510) 336-2181

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Patrick H. Peluso
ppeluso@woodrowpeluso.com*
Taylor T. Smith
tsmith@woodrowpeluso.com*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

*\*pro hac vice admission*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 9, 2020, I served a true and accurate copy of the foregoing documents on all counsel of record by filing the papers with the Court using the Court's electronic filing system.

/s/ Patrick H. Peluso