**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

Attorneys for Defendant Merchant Industry LLC

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| **ABANTE ROOTER AND PLUMBING, INC.**, a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**UNLOCKED BUSINESS STRATEGIES, INC.**, et al.,<br><br>Defendants. | Case No. 4:19-cv-07966-JST<br><br>**DEFENDANT MERCHANT INDUSTRY LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.  12(b)(1) AND 12(b)(2)**<br><br>Date:     In Chambers<br>Time:    In Chambers<br>Before:  The Hon. Jon S. Tigar<br>Ctrm:    6, 2nd Flr. |

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

As the iconic Peter Steiner cartoon once quipped, "On the Internet, nobody knows you're a dog."[1] People and businesses can—and do—misrepresent their identities online on a regular basis; this has become an unfortunate reality of the increasingly online world in which we live. Such was the case here. An unauthorized third party with access to Merchant Industry LLC ("Merchant Industry")'s publicly available promotional materials apparently represented itself to Plaintiff as Merchant Industry's "franchisee." This situation, while regrettable, is not one of Merchant Industry's making. Just as a person claiming to represent Microsoft cannot render the company liable for his promise to send a $5,000 gift card to everyone who shares his Facebook post,[2] an unauthorized would-be reseller cannot bind Merchant Industry to account for actions the company never knew about, authorized, or encouraged.

Personal jurisdiction can indeed, as Plaintiff argues, be extended to hale a principal into court to face the actions of its agent. But when a third party, one acting without authority, approval, or any kind of agreement, forms the only connection between an alleged principal and the forum state, the exercise of jurisdiction over the alleged principal is unfair and improper. The alternative would yield an absurd result, one in which tortious actors in one state could force third parties to litigate there, despite never once having themselves taken advantage of the forum state itself. For these reasons, the Court should grant Merchant Industry's Motion to Dismiss (its "Motion") Plaintiff's Second Amended Complaint ("SAC").

//

//

---

[1] Published in *The New Yorker* July 5, 1993, and available here: https://en.wikipedia.org/wiki/On_the_Internet,_nobody_knows_you%27re_a_dog#/media/File:Internet_dog.jpg.

[2] This is a common scam promulgated "on behalf of" hundreds of companies. For a discussion of the scheme and some examples, see David Mikkelson, Free Company Giveaways, available at https://www.snopes.com/fact-check/thousand-dollar-bill/.

**ARGUMENT**

1. <u>**Plaintiff cannot meet its burden of making a prima facie showing that Merchant Industry ever engaged in any conduct to authorize or ratify UBS's actions, and therefore, cannot use agency to establish personal jurisdiction.**</u>

Plaintiff claims that this Court has jurisdiction over Merchant Industry because Defendant Unlocked Business Strategies, Inc. and/or and Thomas Costa (collectively, "UBS") allegedly acted with apparent authority or else Merchant Industry ratified UBS's conduct. "Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *N.L.R.B. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir.1997). "[T]he ostensible authority of an agent cannot be based solely upon the agent's conduct." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). The third party's belief must not only be reasonable, but also "traceable" to the principal's manifestations. *See* Restatement (Third) of Agency §2.03 (2006). In other words, absent some form of ratification by a principal, the actions and assurances of a purported agent <u>alone</u> cannot confer apparent authority. The reason for this rule is obvious: were it not so, any person or business could be haled into court to answer for the actions or promises of a self-described "agent," despite never having known the alleged "agent" was claiming to represent him in the first place. Restated simply, "[a]pparent authority results when the principal <u>does something</u> or <u>permits the agent to do something</u> which reasonably leads another to believe that the agent had the authority he purported to have." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017) (emphasis supplied).

This case shares factual similarities with *Rapiscan Sys., Inc. v. Garnett*, No. CV 18-10780 PA (EX), 2019 WL 1883911, at *5 (C.D. Cal. Mar. 8, 2019). There, two parties entered negotiations over a promissory note—one party from Arizona and one party from California. *Id.*. At one point, two individuals (purported agents of the Arizona-based party)

1 traveled to California and participated in negotiations, whereby a deal was ultimately
2 reached. *Id.* During the suit that followed, the California-based plaintiff sought to hale the
3 Arizona party into court based upon the acts and representations of the alleged agents.
4 *Id.* Despite the fact that negotiations had indeed occurred—negotiations that presumably
5 benefitted the defendant—the defendant argued that the two individuals had never been
6 his agents. *Id.* The plaintiff rebutted by arguing that it was "apparent that [the individuals]
7 were acting on [the defendant's] behalf and/or at his direction as his agents." *Id.*

8       The court held that the exercise of personal jurisdiction was improper, even under
9 an apparent agency theory. *Id.* In the absence of any other facts establishing that the
10 supposed principal had done anything to engender the plaintiff's belief that these
11 individuals were his agents, the court determined that the plaintiff's statements were
12 nothing more than "bare allegation[s]." *Id.*

13       Here, Plaintiff argues that UBS's <u>own actions</u> support a finding of jurisdiction.
14 There is no evidence (because none exists) of an agreement between Merchant Industry
15 and UBS. There is no evidence that Merchant Industry ever made any representations to
16 Plaintiff, held UBS out as an authorized seller on its website, etc. Plaintiff correctly notes
17 that it is bizarre that UBS would represent itself as Merchant Industry's agent when this
18 was not the case; the reasons for this, however, can only be supplied by UBS itself, as
19 Merchant Industry does not and cannot speculate as to UBS's reasons for this false
20 representation.

21       The exhibits Plaintiff supplies in support of its response to the Motion do not
22 advance its position. Plaintiff attaches emails <u>from UBS</u> (not from Merchant Industry) in
23 which UBS claims to be a Merchant Industry affiliate. These are not representations
24 advanced by Merchant Industry, and so cannot form the basis for personal jurisdiction.
25 Next, the information contained in the brochures Plaintiff attaches are publicly available—
26 in fact, one can be viewed at the following website: https://swipe4free.com/partner/#lp-
27 pom-block-280. These are accessible by Plaintiff as well as to the public at large to
28 provide information about how Merchant Industry's Swipe4Free product works; UBS's

familiarity with these details shows only that it accessed Merchant Industry's website. As for the other brochure, it appears (though, once again, Merchant Industry can only speculate) that in furtherance of its objective UBS downloaded Merchant Industry's marks and graphics to cobble together its own promotional materials—complete with UBS's own phone number, instead of Merchant Industry's. Such an infringement cannot form the basis of jurisdiction; otherwise, any business that created informational materials regarding its product would be subjecting itself to jurisdiction across the country.

Plaintiff's argument that Merchant Industry generally employs resellers and affiliates and is therefore liable for the actions of an unauthorized actor fares no better. The practice of engaging authorized resellers and affiliates does not render a business liable for the actions and conduct of unauthorized resellers. The parties do not dispute that, if UBS were an authorized agent, then Merchant Industry could be held liable for certain of its actions. But Plaintiff's burden here is to show that the actor in question was an authorized agent, and that is what it cannot do. The mere existence of other agents is irrelevant to such an inquiry.

Nor can Plaintiff fairly claim that Merchant Industry has ratified UBS's conduct. Ratification requires the affirmance of a prior act done by another. *See Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019). In arguing ratification, Plaintiff contends that Merchant Industry has accepted some benefit from UBS's calls and email, which begs the question—what benefit? The SAC does not allege that Plaintiff ever purchased the Swipe4Free product. It does not claim that Merchant Industry gained a customer. The only fruit of UBS's actions has been this lawsuit, and Merchant Industry has hotly disputed that UBS had authority to act on its behalf since it first became aware of this case. It has certainly never affirmed UBS's action, whether directly or by tacitly accepting some non-existent benefit.

In summary, the only evidence Plaintiff points to in support of its apparent agency (and ratification) theories is evidence supplied by the unauthorized third party itself. Anyone with a computer could access Merchant Industry's promotional materials and

email them to a third party, but their unauthorized, unratified choice to do so does not justify forcing Merchant Industry to defend itself against suit in California. Apparent agency and ratification both require action <u>on the part of the principal</u>. Plaintiff cannot point to any such action, and so has failed to meet its *prima facie* burden of establishing evidence of personal jurisdiction.

2. **Plaintiff cannot retroactively allege facts to support a claim of standing by attempting to attribute five UBS phone calls to Merchant Industry.**

Even if Plaintiff could establish that this Court had personal jurisdiction over Merchant Industry, the suit should be dismissed for Plaintiff's lack of standing. Plaintiff must establish that it suffered a concrete injury in fact in order to have standing under Article III. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Yet, in its Opposition, Plaintiff fails to identify any such injury that it suffered as a result of receiving the one communication in this case that identifies Merchant Industry in any way—a solitary email.

To escape this fate, Plaintiff argues without factual support that the five phone calls UBS made to it were all made on Merchant Industry's behalf. Yet the SAC itself does not allege that UBS connected Merchant Industry to any of these calls. Indeed, the only communication it actually attributes to Merchant Industry is the email that UBS sent. (SAC ¶28.) The SAC does not allege that UBS ever identified Merchant Industry in the calls, claimed to be a Merchant Industry affiliate, or even mentioned the Swipe4Free product. In short, the SAC fails to tie Merchant Industry to anything other than <u>one email</u>, and Plaintiff cannot now backfill the SAC with allegations that Merchant Industry had any involvement with UBS's phone calls.

Plaintiff alleges UBS called it five times. Thereafter, Plaintiff alleges that UBS claimed to be a Merchant Industry affiliate in an email. But it does not follow (and the SAC does not allege) that the content of the calls and the content of the emails were even related. Plaintiff lacks standing to sue Merchant Industry because the only communication that actually implicated Merchant Industry was an email, and Plaintiff has failed to identify any injury that email caused it to suffer. For that additional reason, Plaintiff's claims

Case No. 4:19-cv-07966-JST      5      **DEFENDANT'S REPLY ISO MTN TO DISMISS**

against Merchant Industry should be dismissed.

## CONCLUSION

Plaintiff seeks to hale Merchant Industry into court in another state based solely upon the unauthorized, unratified actions of a third party. But apparent authority and ratification alike both require action <u>by the principal</u> to give rise to the agentic relationship. Agency cannot exist solely based upon the alleged agent's false representations. Plaintiff has failed to come forward with any evidence establishing a prima facie case that Merchant Industry ever acted to authorize or ratify UBS's actions. Therefore, Plaintiff's claims against Merchant Industry should be dismissed. Additionally, the SAC only identifies one communication connecting Merchant Industry to Plaintiff—a lone email which Plaintiff has failed to allege caused any concrete injury, as required to confer standing. This offers a separate basis for dismissal. In the alternative, Merchant Industry respectfully requests that this Court hold an evidentiary hearing and require Plaintiff to come forward with facts to meet its burden of showing that an agentic relationship between Merchant Industry and UBS existed, sufficient to support a finding of personal jurisdiction.

Respectfully Submitted,

Dated: October 16, 2020            **KRONENBERGER ROSENFELD, LLP**

By: _____s/ Karl S. Kronenberger_____
       Karl S. Kronenberger

Attorneys for Defendant Merchant Industry LLC