# Exhibit 1

Steven L. Weinstein
steveattorney@comcast.net
P.O. Box 27414
Oakland, CA 94602
Tel: (510) 336-2181

Patrick H. Peluso
ppeluso@woodrowpeluso.com*
Taylor T. Smith
tsmith@woodrowpeluso.com*
**WOODROW & PELUSO, LLC**
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

**Pro Hac Vice*

*Attorneys for Plaintiff and the Classes*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

**ABANTE ROOTER AND PLUMBING, INC.,** individually and on behalf of all others similarly situated,

Plaintiff,

v.

**UNLOCKED BUSINESS STRATEGIES, INC.** a New York corporation, **THOMAS R. COSTA**, an individual, and **MERCHANT INDUSTRY, LLC d/b/a SWIPE4FREE**, a New York limited liability company,

Defendants.

Case No. 4:19-cv-07966-JST

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS REQUEST FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

Hearing: December 18, 2020
Time: 2:00 p.m.
Judge: Hon. Jon S. Tigar
Courtroom: 6, 2nd Floor

Defendant Merchant Industry, LLC ("Merchant Industry") has moved to dismiss this action—which alleges wide-spread violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*—claiming that the Court lacks jurisdiction. In support, Merchant Industry has asserted that the actions of co-Defendants Unlocked Business Strategies, Inc. ("UBS") and

Thomas R. Costa ("Costa") cannot be attributed to it for jurisdictional purposes. This is so, according to Merchant Industry, because it has no relationship with UBS or Costa and lacks knowledge of any relationship between UBS or Costa and any of its authorized resellers or affiliates. Newly discovered information produced in response to a subpoena issued to non-party MLL Marketing, Inc. ("MLL"), however, casts serious doubt on these assertions. Indeed, MLL has produced a series of emails, marketing materials, and drafts of Merchant Industry contracts—all of which reveal a relationship between Merchant Industry, UBS, Costa, and MLL. Plaintiff files this supplemental brief to highlight these newly-discovered facts, which support Plaintiff's request for leave to conduct jurisdictional discovery.

*First*, MLL produced emails evidencing negotiations between Merchant Industry, MLL, and Costa of an Independent Sales Contractor Agreement. On July 25, 2019, Leonid Levit of MLL sent Costa and others proposed edits to a Merchant Industry independent sales contractor agreement. (*See* July 25, 2019 email, a true and accurate copy of which is attached hereto as Ex. A; *see also* Redlined Merchant Industry Agreement, a true and accurate copy of which is attached hereto as Ex. B.) On July 30, 2019, Ramon Toribio of Merchant Industry sent an email to Defendant Costa, which appeared to memorialize Merchant Industry's positions with respect to the proposed edits. (*See* July 30, 2019 Email, a true and accurate copy is attached hereto as Ex. C.) Mr. Toribio's July 30, 2019 email corresponds directly to the Redlined Merchant Industry Agreement. (*Compare* Ex. B, *with* Ex. C.) On August 2, 2019, Andrea Lopez of Merchant Industry sent a Docusign link for MLL to sign an agreement. (*See* August 2, 2019 Email, a true and accurate copy of which is attached hereto as Ex. D.) Shortly thereafter, Mr. Levit responded by stating that "Everything is signed . . ." (*See id.*)

Plaintiff's counsel raised the possibility that a third-party lead generator may have formed the basis of a relationship between Merchant Industry and UBS in both its opposition (dkt. 53 at pg. 12) and at the hearing. These materials indicate that was likely the case. Further discovery is necessary to understand the particular relationship between Merchant Industry, MLL, Costa, and

UBS. The point here is that contrary to Merchant Industry's repeated representations, the facts indicate that *some* relationship existed between the Defendants named in this lawsuit.

*Second*, on August 8, 2019, Defendant Costa sent an email to Glenn Mondry, Merchant Industry's V.P. of Business Development, and Ramon Toribio, an Executive Vice President of Merchant Industry, requesting marketing materials. (*See* August 8, 2019 Email, a true and accurate of which is attached hereto as Ex. E.) In response, Mr. Mondry responded by providing Costa with a Google Drive link titled "ISO Welcome Packet" and attached additional marketing materials. (*See id*.) Mr. Mondry also provided an attachment titled "TOP10_Email" (a true an accurate copy of which is attached hereto as Ex. F). And a review of the Google Drive documents revealed a document titled "Swipe4Free Merchant Tri-Fold". (*See* Merchant Industry Tri-Fold, a true and accurate copy of which is attached hereto as Ex. G.)

These are the very same documents that were used to solicit Plaintiff to purchase Merchant Industry's products and services. (*Compare* Exs. F and G, *with* Dkt. 53-1, Ex. 2.) In its reply, Merchant Industry rejected the notion that it provided marketing materials, claiming the brochures were "publicly available" and speculating that UBS may have "cobble[d] together" its own materials. (Dkt. 54 at 3-4.) The newly discovered documents, however, cast serious doubt on the veracity of such assertions. Indeed, it now appears that it was Merchant Industry itself that provided the marketing materials that were used to solicit Plaintiff.

*Third*, on August 6, 2019, Leonid Levit of MLL sent an email to Costa and others requesting that they create logins in a client relationship management system ("CRM") for a list of individuals in addition to two administrative logins for emails associated with Gurland Corp.[1] (*See* August 6, 2019 Email, a true and accurate copy of which is attached hereto as Ex. H.) In response, Costa, using his "unlockedbiz.com" email account, forwarded the email to Merchant Industry to ask where the request should be directed. (*See id.*) Mr. Mondry of Merchant Industry

---

[1] Counsel for UBS and Costa identified Gurland Corp. as the call center that was hired to place calls to solicit sales of Merchant Industry products and services.

responded directly to Mr. Levit stating:

> We are getting ready to enter the list of emails below to create logins for them. The DocuSign that was sent to you has not been fully completed yet. We need a copy of a voided check and we can then create a profile that will allow us to enter and create the logins within the CRM System. We can have these emails entered with logins created within 24 hours after the profile is complete.

(*See id.*) Thus, it appears that Merchant Industry agreed to create logins on its systems for a list of individuals associated with Gurland, MLL, Costa, and UBS. This is further indicative of a business relationship between MLL, Merchant Industry, Costa, and UBS.

Taken together, the information supplied by MLL reveals a relationship between Merchant Industry, Costa, UBS, MLL, and Gurland Corp. Indeed, MLL has produced evidence of a sales agreement with Merchant Industry, and it was Defendant Costa who apparently negotiated the terms of this agreement with Merchant Industry. Moreover, Merchant Industry assisted Costa, UBS, and MLL by providing trainings, marketing materials, and other documents. These same marketing materials were ultimately utilized to solicit Plaintiff following the calls at issue in this case. Merchant Industry has a credibility problem insofar as it has maintained the opposite.

Plaintiff is just scratching the surface and further discovery is necessary to understand the relationship between the Parties. The recently produced information reveals a relationship among the existing defendants, which further supports the proposition that jurisdictional discovery is necessary here. *See Calix Networks, Inc. v. Wi-Lan, Inc.*, No. C-09-06038-CRB DMR, 2010 WL 3515759, at *3 (N.D. Cal. Sept. 8, 2010) ("Indeed, it may be an abuse of discretion for a court to deny jurisdictional discovery where such discovery 'might well demonstrate' jurisdictionally relevant facts and the plaintiff is denied the opportunity to develop the jurisdictional record." (collecting cases)).

Because the newly discovered information identifies, among other things, a relationship between Merchant Industry and Costa and UBS, the Court should grant Plaintiff leave to conduct jurisdictional discovery.

Respectfully submitted,

Dated: January 27, 2021

**ABANTE ROOTER AND PLUMBING, INC.**, individually and on behalf of all others similarly situated,

/s/ Taylor T. Smith
One of Plaintiff's Attorneys

Steven L. Weinstein
steveattorney@comcast.net
P.O. Box 27414
Oakland, CA 94602
Tel: (510) 336-2181

Patrick H. Peluso
ppeluso@woodrowpeluso.com*
Taylor T. Smith
tsmith@woodrowpeluso.com*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

**pro hac vice admission*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 27, 2021, I served a true and accurate copy of the foregoing documents on all counsel of record by filing the papers with the Court using the Court's electronic filing system.

/s/ Taylor T. Smith

# Exhibit A

WOODROW&PELUSO

Taylor Smith <tsmith@woodrowpeluso.com>

## Leonid Levit / MLL Marketing Inc. - 8 Of X

1 message

**Leonid Levit** <levitleonid@gmail.com> Fri, Jan 15, 2021 at 2:18 PM
To: Taylor Smith <tsmith@woodrowpeluso.com>

Tom asked me to comment on the contract that Merchant sent to him and these were my comments to him based on what I knew about the call centers interacting with him.

---------- Forwarded message ---------
From: **Leonid Levit** <levitleonid@gmail.com>
Date: Thu, Jul 25, 2019 at 11:36 AM
Subject: Merchant Industries markup
To: Tom Costa <thomas@unlockedbiz.com>, Paul Orena <pvomarketing@gmail.com>, Alex P <alexp@debtrelieflaw.ca>

1 - pg 4, cant do site inspections we are doing nationwide call center campaign

2 - pg 5, do not want to disclose all of our relationships I am assuming. Why would they be happy that we are working with signapay as well?

3 - pg 5, cant provide training over the telephone on terminals, I thought that was their job?

4 - pg 13, I redefined how merchant accounts will be sold if they decide to sell us. They were capping our returns arbitrarily.

5 - pg 19, ISO cant randomly adjust bonuses that makes no sense. They also will not have security interest in my company as collateral, I have assets in the company so would not allow that.

everything else good, please see redlined attached

**Please_DocuSign_standard_agreement-_mutual_i.docx**
172K

# Exhibit B

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

Merchant
Industry

SUBJECT: Independent Sales Contractor Agreement
FROM: Leo Vartanov CEO

Before getting started, the following, enclosed items must be returned to us:

Signed Contract, each page initialed
ACH Authorization Form
Information Sheet
Merchant Submission Requirements Form
W-9 Form
Voided Business Check
Driver's License
Select Preferred Split Structure
Resale Certificate

Merchant Industry, LLC.
36-36 33rd St Suite 206
Long Island City, NY 11106
866.811.1005 P | 866.597.7176 F
Email: Iso@merchantindustry.com

We look forward to working with you.

Regards,

Leo Vartanov

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

**Merchant Industry, LLC**
**INDEPENDENT SALES CONTRACTOR AGREEMENT QUESTIONNAIRE**

***Please write N/A if the question is not applicable to you.**

Individual Name- levitleonid@gmail.com

Incorporated Name if Any- (if you will be paid to a company name instead of personal name)

MLL Marketing Inc.

Date of Birth- 06/01/1992

Mailing Address- ____________

Mailing City, State, and Zip Code-

Brooklyn, NY 11235

Best Contact #- 6467750451

Email- levitleonid@gmail.com

SSN/EIN # (if being paid to a company name please provide EIN #) ____________

Drivers License State and #- (Please provide a copy via email)

____________

**Direct Deposit** (If you choose to be paid directly to your bank, if not please write N/A in the space)

Routing # ____________

Account # ____________

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

**Merchant Industry, LLC**
**INDEPENDENT SALES CONTRACTOR AGREEMENT**

This agreement (the "**Agreement**") is made and entered into on the Effective Date indicated below by and between: Merchant Industry, LLC, a company having its principal place of business at 36-36 33rd Street Suite 206, Long Island City, NY 11106 USA ("**ISO**"), and the agent identified below("**Agent**").

| Contact Name: | levitleonid@gmail.com | | |
|---|---|---|---|
| Agent Name (corporation if incorporated, personal name ifnot): | MLL Marketing Inc. | | |
| Agent Address: | | | |
| Agent Tel. No.: | 6467750451 | | |
| Agent E-mail Address: | levitleonid@gmail.com | | |
| Federal EIN/Social Security No.: | | | |
| Agent Liability for Merchant Losses (check one) | PROCESSOR A: [ FIRST DATA and Other Platforms] (check one) | | ✔ **Agent is not liable for Merchant Losses** for Merchants at First Data except as provide in Section 7.4. |
| | PROCESSOR B: [TSYS] (check one) | ✔ **Agent is 100% liable** for all Merchant Losses for Merchants at TSYS. See Section 7.4. | |
| Exclusivity of Agent to ISO (check one) | ☐ **Agent is exclusive** to ISO. See Section 1.2. | | ☒ **Agent is non-exclusive to ISO**. See Section 1.2. |

**WHEREAS** ISO is in the business of promoting credit and debit card processing services and other payment and equipment services for merchants directly or indirectly (the "**Services**") for and on behalf of one or more banks, processors and other vendors (collectively, the "**Vendor**"); and

**WHEREAS**, Agent is in the business of developing and maintaining revenue-generating client relationships and desires to establish an independent agent relationship whereby it will solicit and refer merchants to ISO for Services pursuant to the terms hereof.

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

**The parties therefore agree as follows:**

**1. AGENT OBLIGATIONS.**

The following are, without limitation, the principal obligations of the Agent under this Agreement:

1.1 **Solicitation**. Agent shall solicit applications from merchants interested in procuring Services (each such merchant that subsequently decides to procure the Services because of solicitation by Agent hereunder shall be referred to herein as a "**Merchant**"). Each Merchant shall procure the Services pursuant to an electronic or written merchant agreement between the Merchant and Vendor (together with application material submitted by the Merchant through the Agent, the "**Merchant Agreement**"). The format of Merchant Agreements, as between electronic or paper, shall be prescribed by ISO. Agent shall set its own schedule and objectives in performing under this Agreement. Agent shall not be a party to the Merchant Agreement. In soliciting potential Merchants, Agent shall use best efforts to obtain the most recent fiscal year business balance sheet, profit and loss statements on each Merchant, personal financial statements on principals of the Merchant, if applicable or requested by ISO, and verifying the veracity of information provided by the Merchant in its application for Services. Agent represents that all information it submits to ISO shall be complete, truthful, and accurate. During solicitation of potential Merchants hereunder, Agent may not create any liability for ISO except as may be approved by ISO in writing in advance. Agent shall not solicit potential Merchants that (a) are already procuring services from ISO; or (b) are not acceptable under the underwriting guidelines of ISO.

**Deleted:** as well as perform an on-site inspection of each potential Merchant location for the purpose of verifying inventory,

1.2 **Exclusivity.** If Agent has checked that it is exclusive to ISO on the first page of this Agreement, then, during the term of this Agreement, Agent shall not itself, nor shall any of its affiliates, enter into any agreement similar to this Agreement with a third party or otherwise solicit merchants to offer them credit or debit card processing services or any other payment services offered by ISO or Vendor for or on behalf of any third party. If Agent has checked that it is non-exclusive to ISO, then it shall have the right to enter into agreements similar to this Agreement with third parties. In either case, Agent shall remain bound by the other provisions hereof, including without limitation, the non-solicitation and confidentiality provisions hereof.

1.3 **Merchant Application and Agreement**. If a potential Merchant is suitable under ISO and Vendor underwriting guidelines, Agent will submit an application completed by the Merchant, in a form prescribed by ISO, together with a Merchant Agreement executed by the prospective Merchant. ISO shall review the credit profile, product and delivery method to determine whether to accept Merchant in its sole and absolute discretion. If ISO requests additional information from Merchant, Agent shall obtain such information. Agent acknowledges and agrees that ISO and Vendor shall each have the unilateral right to decline a Merchant application or terminate any Merchant accepted for processing.

1.4 **Expenses, Tools and Instruments**. Agent agrees to invest in its own business in order to perform under this Agreement. Agent shall be solely responsible for all expenses incurred while performing hereunder. Agent shall furnish its own office space and any other facilities, tools, equipment, supplies, terminals, or services, as shall be necessary for the performance of duties of Agent and each Sub-Agent hereunder.

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

1.5

1.6 **Rules.** The Services and ISO are governed by the rules and regulations of the Vendor, Visa (available here www.visa.com/rules), MasterCard (available here http://www.mastercard.com/us/wce/PDF/13000_MSP-Entire_Manual.pdf) and other payment card associations or brands as well as other industry or government regulations applicable to the Vendor and ISO (collectively with the rules and procedures of ISO itself, the "**Rules**"). Agent shall comply with the Rules and ISO's own policies and procedures. Agent may not cause ISO to be in breach of its obligations under its agreement with Vendor.

1.7 **Branding Obligations Under Rules.** The Rules require ISO and Agent and all participants in the merchant account business to comply with certain branding obligations. Consequently, unless the Agent is itself registered with Visa and MasterCard as a sub-ISO of ISO, in performing hereunder, Agent must: (a) submit all marketing material to ISO for ISO to review for compliance with the Rules, and accept in writing prior to use; (b) use only the name of ISO and not its own business name or any other name or identifying mark other than those prescribed by ISO, unless permission is obtained in advance and in writing from ISO; (c) provide a business card featuring ISO's logo and Vendor's name, city and state; (d) answer and respond to all telecommunications or other correspondence using the name of ISO and no other name; (e) use the logos and names of Visa, MasterCard, other bank associations or brands, the Vendor and ISO only as expressly permitted by ISO from time to time; and (f) not make any representation that ISO is in the business of leasing equipment.

1.8 **Honesty**. Agent shall make full and fair disclosure to all potential Merchants of all pricing and fees applicable under a Merchant Agreement. Agent shall provide ISO with information that Agent believes, on reasonable inspection, to be true and complete and accurate. Agent will perform its obligations honestly and in a good workmanship manner, with professional diligence and demeanor. Agent will uphold the good name of ISO and Vendor in the marketplace.

1.9

1.10 **Service**. During the Term hereof and so long as Agent is receiving any compensation hereunder, Agent shall provide ongoing support to Merchants and remedy any customer service problems encountered by them. All requests for service by Merchants will receive a timely response from Agent. Failure to fulfill this Agent Service Obligation shall grant to ISO, in addition to all other available remedies, the right to remove such merchant accounts from Agent's client residual base (i.e., book of business). Breach of this Obligation shall also be defined as an Event of Default (breach of material obligation) under the provisions of sections 6.2(c) and 6.3 hereunder.

1.11 **Sub-Agents**. Agent shall be wholly liable for all acts and omissions of all of its employees, agents or representatives (each a "**Sub-Agent**"). Agent must have a written agreement with each Sub-Agent which will be substantively identical to this Agreement. Agent shall exclusively bear all liability for compensation of Sub-Agent and any other liabilities arising in relation thereto. Agent

**Deleted:** **Disclosure of Additional Relationships**. Agent shall disclose to ISO the existence and nature of any relationships between Agent, or any of its affiliates, and any third parties that are competitors of ISO. Neither Agent nor any of its affiliates shall enter into an agreement with Vendor.

**Deleted:** <#>**Training**. Agent shall provide training to each Merchant and its employees in the Rules applicable to the Services, the operation of any terminal equipment supplied by Agent, ISO or Vendor, including all requirements relating to the security of cardholder and other non-public personal information.¶

**Formatted:** List Paragraph, Justified, Indent: Left: 0.75", Hanging: 0.49", Right: 0.99", Outline numbered + Level: 2 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.75" + Indent at: 1.25", Tab stops: 1.24", Left

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

guarantees that all its Sub-Agents shall perform in a manner consistent with the terms hereof. Agent shall be responsible for ensuring compliance of its Sub-Agents with the terms of this Agreement and the Rules. Upon request by ISO, each Sub-Agent shall enter into a non-solicitation and confidentiality agreement directly with ISO in a form prescribed by ISO. Without limitation, Agent shall indemnify and hold ISO harmless from all claims made by any Sub-Agent against ISO or Vendor or claims made by third parties because acts or omissions of Sub-Agents. Agent agrees to provide workers' compensation insurance for those of its Sub-Agents who are entitled to such benefits and agrees to hold harmless and indemnify ISO for all claims arising out of any injury, disability, or death of any Sub-Agent.

1.12 **Tax**. Agent shall be liable for all taxes payable on the revenue earned by it hereunder. The total amount of income the Agent receives hereunder, if any, shall be reported on a tax form applicable to independent contractors at the end of each calendar year.

1.13 **Adverse Merchant Information**. During and following the Term hereof and so long as Agent is receiving any payments hereunder, Agent shall immediately notify ISO if Agent becomes aware of any adverse information concerning the financial condition of a Merchant or any other potential liabilities relating to Merchants.

1.14 **PCI Definition**. For purposes of this Agreement, "**Data Security Requirements**" means the Payment Card Industry Data Security Standard developed by MasterCard and Visa and other similar requirements that apply to entities that transmit, process or store cardholder, transaction card or bank account information, as may be promulgated or amended by a card or electronic payment association or any local, state or federal legislative, judicial or administrative authority from time to time, that ISO reasonably believes may result in harm to its reputation or financial liability to ISO or its any of its affiliates.

1.15 **PCI Compliance.** As a requirement of the Rules, Agent represents and warrants that it and each of its Sub-Agents and third-party service providers are, and during the Term of this Agreement will remain, in compliance in all material respects with all applicable Data Security Requirements, at the expense of Agent. Without liability ISO and Vendor each have the right to withhold Services to Merchants or cease performing hereunder, in whole or in part, and immediately suspend connectivity to the Agent, if Agent, or any of its Sub-Agents, are not in compliance in all material respects with all applicable Data Security Requirements.

1.16 **Communication and Contracting Security.** At the discretion of ISO, Agent shall use ISO's email or other communication system to correspond with actual and potential Merchants and shall use an electronic signature system selected by ISO for presenting Merchant Agreements to actual and potential Merchants. Agent shall not be entitled to compensation under this Agreement for any Merchant that was not solicited and signed-up using the ISO's communication and contracting policies and systems.

**2. ISO OBLIGATIONS.**

The following are the principal obligations of ISO under this Agreement:

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

2.1     **Supply of Merchant Applications**. ISO shall provide Agent with applications for Merchants to use in applying for the Services through Agent and ISO. ISO shall accept completed Merchant applications subject to the conditions set out above.

2.2     **Payment of Agent Residuals**. ISO shall pay fees and residuals ("**Residuals**") to Agent in accordance with **Schedule "A"** hereto, so long as: (a) Agent and Sub-Agents are in compliance with the terms hereof; (b) ISO is receiving its own compensation from Vendor in respect of Merchants referred to ISO hereunder; and (c) such Merchants are continuing to process transactions through the Vendor in conformity with their respective Merchant Agreements. ISO reserves the right to offset from Residuals: (a) any amounts owed by Agent or any Sub-Agent to ISO or Vendor for any reason including, without limitation, indemnification obligations hereunder;
(b) any revenue paid to Agent but that is uncollected from the Merchant or Vendor or that is refunded by the Vendor to the Merchant; and (c) any losses incurred by ISO due to the wrongful or negligent acts by Agent or any Sub-Agent. In the event an Agent's book of business remains in arrears for a period of ninety days or more, ISO reserves the right to remove ownership from the Agent's book of business, in the form of a residual purchase of the account(s) at ISO's choice at a purchase price of 10x the average monthly residual. In such circumstance, Agent guarantees performance on the account(s) for a period of ten months. ISO reserves the right to amend **Schedule "A"** where such amendment is related to or because increases or changes in ISO costs or new regulatory requirements. ISO shall pay all Residuals due to Agent on or about the 30th day of the month for all Residuals which accrue during the preceding calendar month. For a payment to become due and payable hereunder, Agent's total Residuals for the month must equal or exceed $50.00, lower balances after the first sixty (60) days will NOT be carried over. If, after 180 days, the monthly minimum is not met, no amounts will be payable hereunder and this Agreement shall automatically terminate. There shall be no Residuals payable to Agent in respect of any merchant that was referred to ISO prior to Agent referring the Merchant to ISO.

2.3     **Errors and Disputes**. Agent shall carefully review each Residual payment received hereunder and shall report any errors therein or disputes therewith to ISO within thirty (30) days of receipt of such payment. Any error or dispute that Agent fails to report to ISO within such thirty (30) day period shall be waived, and Agent will be prohibited from making any claim with respect to errors in payment or underpayment of such Residuals and pursuing any disputes related to such Residuals thereafter. Agent may not make any claim against ISO for unpaid or underpaid Residuals or other amounts hereunder extending more than thirty (30) days prior to the date of the claim.

2.4     **Reporting to Agent**. So long as any Residuals are payable to Agent hereunder, ISO shall provide a report to Agent summarizing the basis upon which the payment is computed.

2.5     **ISO Access System License.** For the term of this Agreement, ISO grants to Agent a limited, non-transferable, non-exclusive license to use ("**License**") certain electronic reporting systems of ISO in relation to the Merchants (the "**ISO Access System**"). In utilizing the ISO Access System, Agent shall be granted access codes. Agent shall retain sole and exclusive responsibility for all use of such access codes or the ISO Access System in respect of its account therein (the "**Account**"). Agent may not use the ISO Access System, or the Account, for or on behalf of any third party.

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

Agent shall indemnify and hold ISO harmless from all claims, losses, or other liabilities arising from the use of the ISO Access System or the Account. The ISO Access System may permit Agent to board Merchants with Vendor. Agent shall not board any Merchants with Vendor, through the ISO Access System or otherwise, except with the prior express consent of ISO on a Merchant by Merchant basis. Agent shall not reverse engineer, decompile, disassemble, translate, modify, or disclose to any third party the ISO Access System. Agent shall have no right to use, market, distribute, sell, sub-license, deliver, or otherwise transfer the ISO Access System, or any part thereof, either for or to any third party. Agent shall not alter any trademarks, trade names, logos, patents, or copyright notices, or other notices or markings, or add any other notices or markings of the ISO Access System or any part thereof, or any of the information posted therein all of which, together with the whole of the ISO Access System, is Confidential Information (as defined below) of ISO. Any future additions, modifications, versions, upgrades, or updates of the ISO Access System released to Agent shall be deemed to be part of the ISO Access System and shall benefit from the restrictions set out herein. ISO may terminate the License at its unilateral discretion; which termination shall not be deemed to be a breach hereunder. ISO will monitor the use of the ISO Access System by Agent to verify compliance by Agent with the terms of this Agreement. Agent may not download any data from the ISO Access System except with the written and express prior permission of ISO.

**3.      REPRESENTATIONS AND WARRANTIES.**

Agent represents, warrants and covenants the following to and for the benefit of ISO for the Term hereof and so long as Agent is entitled to any Residuals hereunder:

3.1     **Independently Established Business.** Agent is engaged in an independently established business for the purpose of developing and maintaining revenue-generating client relationships with merchants. If Agent is an individual engaged in a sole proprietorship, Agent must have duly filed the required Certificate of Assumed Business Name, and must present a copy of the said certificate to ISO. If the Agent is a corporation or otherwise incorporated or formed, it must comply with all corporate filing requirements, and must present a copy of its Certificate of Incorporation to ISO.

3.2     **Good Standing**. If the Agent is an individual, the Agent is above the age of twenty-one (21) and of the age of majority in the jurisdiction where he or she is domiciled, and is fully competent to enter into this Agreement. If Agent is a corporation or otherwise incorporated or formed, it is validly existing and in good standing under the laws of the State where its principal office is located.

3.3     **Full Authority**. Agent has full authority and corporate power to enter into this Agreement and  to perform its obligations under this Agreement.

3.4     **Sale of Information**. Agent shall not use, sell, purchase, provide, disclose or exchange credit card, debit card or bank account numbers or Merchant information, or any information collected or received hereunder, to any third party; all such information being the sole and exclusive property of ISO.

3.5     **No Violation**. Agent's performance of this Agreement will not violate any applicable law or regulation or any agreement to which it is bound as of the date hereof. Without limitation, this

Agreement will not cause Agent to be in violation of any of its non-compete or non-solicitation obligations to any third party nor will the Agent perform hereunder so as to be in violation of them. Agent is prohibited from using third party confidential information in performing hereunder and is prohibited from causing such information to be entered into the ISO Access Systems.

3.6 **Enforceability**. This Agreement represents a valid obligation of Agent and is fully enforceable against it.

3.7 **Compliance**. Agent will comply with the terms of this Agreement, with all applicable Rules, any agreement between ISO and a Vendor as well as all applicable Data Security Requirements.

3.8 **No Litigation**. Neither Agent, nor its officers and/or directors, are a party to any pending litigation that would have an impact on this Agreement and have never been fined or penalized by Visa, MasterCard or any other association in the credit, payments or banking industry.

3.9 **No Crime**. Agent has never been convicted of a crime punishable by greater than fifteen (15) days of incarceration or of a crime of dishonesty. Prior to the execution of this Agreement, Agent has disclosed to ISO all information that may be relevant to ISO in its deciding whether or not to enter into this Agreement, such as prior dishonest or illegal activity by Agent.

3.10 **No Dishonesty**. Agent has never and will not falsify, alter or in any way change information provided by an actual or potential Merchant on an application or otherwise face breach of contract, legal penalties, and loss of residuals. Breach of this provision, without limitation, shall result in an immediate termination of this Agreement and all Residual payments to Agent.

**4 NON-SOLICITATION.**

4.1 **Non-Solicitation and Non-Circumvention**. Agent agrees that, (a) during the Term hereof, (b) so long as Agent is receiving Residuals hereunder, and (c) for a period of two (2) years following the expiration of (a) or (b), neither Agent nor any of its affiliates will directly or indirectly engage in the following conduct, or permit or assist any third party to engage in the following conduct, in any capacity including as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or in any other individual or representative capacity ("**Non-solicitation Obligations**"):

(a) **Merchants**. call on, solicit, take away, or attempt to call on, solicit, or take away any of the merchants, customers or Merchants of ISO, whether boarded by the Agent or not, except in the course of good faith performance under this Agreement;

(b) **Agents and Employees**. entice, induce or in any manner influence any person or entity who is, or shall be in the direct or indirect service of ISO to (a) leave the same for the purpose of engaging in a business or being employed by or associated with any other business; or (b) enter another relationship with a third party or with Agent for the purpose of soliciting merchants for payment services of any kind; or

(c) **Vendor**. enter into any negotiation, contract or otherwise solicit any bank, financial institution or payment services vendor with whom ISO has an ongoing or pending business relationship, for the purpose of entering into any direct business arrangement or contract between Agent and such bank, financial institution or vendor, where performance of the solicited/negotiated/proposed business arrangement or

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

contract would permit Agent to provide services that are substantially similar to or in direct competition with ISO, whether or not such bank, financial institution or vendor continues or discontinues its business relationship with ISO, provided that this section shall not apply to any third party with whom Agent maintains a current business relationship at the time this Agreement becomes effective.

Each Residual report sent to Agent will serve as a reminder to the Agent of the list of Merchants, such as they may be at that time, that Agent agrees to not solicit under this provision. When Agent refers a Merchant to ISO that Agent had previously referred to a third party, (i) Agent represents that it is making such referral without breaching obligations to third parties; and (ii) Agent sells and transfers over to ISO any rights Agent may have in respect of the Merchant and its related information that Agent acquired prior to referring the Merchant to ISO.

4.2 **Breach**. Agent agrees and understands that any breach of its Non-Solicitation Obligations will cause the forfeiture of all Residuals owed by ISO to Agent, as well as grave and irreparable damages to ISO. The time period referred to in Section 4.1 shall be stayed and extended during any violation or breach of the terms of this Section.

4.3 **Interpretation**. If any court shall finally hold that the time, territory or any other provision of this Section constitutes an unreasonable restriction against Agent, Agent agrees that the provisions hereof shall not be rendered void but shall apply as to such time, territory and other extent as such court may judicially determine constitutes a reasonable restriction under the circumstances involved. ISO and Agent shall each request that any such court make a determination of what would constitute a reasonable restriction under the circumstances involved and to reform this Agreement accordingly. This provision of this Section shall survive termination of this Agreement and shall inure to the benefit of ISO, its successors andassigns.

**5 CONFIDENTIALITY OBLIGATIONS.**

5.1 **Confidentiality Obligations**. Agent agrees that, during the Term hereof and thereafter, neither Agent nor any of its affiliates will directly or indirectly engage in the following conduct itself nor permit or assist any third party to breach any of the following obligations (collectively, the "**Confidentiality Obligations**"):

(a) **Confidential Information**. For the purposes of this Agreement, "**Confidential Information**" means all proprietary, secret or confidential information or data relating to ISO, Vendor and any of their respective affiliates, operations, employees, independent sales organizations, agents, products or services, clients, customers or potential customers, merchants or Merchants. Confidential Information shall include, without limitation, Merchant lists, all Merchant Agreements and all parts thereof, Merchant pricing, customer lists, cardholder account numbers, pricing information, Rules (other than publicly available laws and regulations), acquiring bank or processor relationships, Merchant information, leasing information, financial or other data in any format, computer access codes, instruction and/or procedural manuals, payroll information, human resource or personnel information, business strategies and the terms and conditions of this Agreement. Information shall not be considered Confidential Information to the extent, but only to the extent, that such information is: (i) already known to the receiving party free of any restriction at the time it is obtained; (ii) subsequently learned from an independent third party free of any restriction and without

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

breach of this Agreement; (iii) or becomes publicly available through no wrongful act of the receiving party; (iv) independently developed by the receiving party without reference to any Confidential Information of the other; or (v) required to be disclosed by law. For Agent to perform hereunder, ISO will be obliged to disclose to Agent certain Confidential Information concerning the Services and Merchants.

(b)     **Non-Disclosure**.  Agent agrees that he or she will not, except as expressly required in  the conduct of its obligations hereunder or as authorized in writing by ISO, collect, store, use, publish or disclose, during Agent's provision of services to ISO or subsequent thereto, any trade secret or Confidential Information relating to Services (or ISO's sponsoring banks' or processors' products or services) that Agent may in any way acquire by reason of his or her association with ISO. Certain Confidential Information, such as, by example only, credit cardholder information must not only be kept strictly confidential, but must also be stored under lock and key and in encrypted format as is more fully described in Visa and MasterCard Rules applicable to the business of ISO; the Agent shall comply and respect all such Rules. Agent shall not speak to or communicate with any media or journalist or make any public statements concerning this Agreement, the Services, ISO or Vendor without the prior written consent of ISO.

(c)     **Legally Required Disclosure**. If the Agent is required by law or legal process to disclose any of the trade secret or Confidential Information, Agent shall provide ISO with prompt oral and written notice, unless notice is prohibited by law (in which case such notice shall be provided as early as may become legally permissible), of any such requirement so that ISO may seek a protective order or other appropriate remedy.

(d)     **No Misappropriation of Trade Secrets/No Unfair Competition**. Agent further promises and agrees not to engage in competition with ISO or Vendor, at any time after the termination of this Agreement, while making use of Confidential Information relating to Merchants, ISO or Vendor.  Agent acknowledges and agrees that the names and addresses of ISO's (or ISO's sponsoring banks' or processors'), Merchants and other customers and all other Confidential Information relating to those Merchants and customers, including but not limited to account numbers, leasing information, financial information and special needs, are provided in confidence and constitute trade secrets of ISO and that the sale or unauthorized use or disclosure of any of ISO' trade secrets obtained by Agent during its association with ISO constitutes unfair competition. Agent promises and agrees not to engage in any unfair competition with ISO.

(e)     **Return of Confidential Information**. Upon any termination of this Agreement or on demand by ISO, Agent shall surrender to ISO all Confidential Information and materials furnished to Agent by ISO and any materials developed by Agent during the course of the Agreement's term including but not limited to the following: (i) all lists of Merchants and prospective Merchants; and (ii) forms, office supplies, manuals and any other material previously furnished or made available by ISO to Agent.  In addition, upon any termination hereof or on demand by ISO, Agent shall cease any and all contact with any Merchant, Agent or employee of ISO and shall no longer promote the Services.

**6      TERM AND TERMINATION.**

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

6.1   **Term**.  The term of this Agreement shall be for an initial term of one (1) year commencing on  the Effective Date (the "**Initial Term**"). Thereafter, this Agreement shall automatically renew for successive, additional one (1) year terms (each a "**Renewal Term**") unless otherwise terminated in accordance with the termination provisions set forth herein. The Initial Term together with each Renewal Term shall be referred to herein as the "**Term**").

6.2   **Termination**.    Notwithstanding the above, the parties will have the following rights:

(a)   **Automatic Termination**. This Agreement will automatically terminate if: (i) Visa or MasterCard prohibits ISO from providing, or prohibits Vendor from allowing ISO to provide, the services set forth in this Agreement; (ii) ISO ceases to be registered as an independent sales organization or member service provider with Visa or MasterCard; (iii) Vendor stops providing merchant services; or (iv) Vendor is no longer a member of MasterCard or Visa.

(b)   **Termination Without Cause**. Either party may terminate this Agreement at the end of the Initial Term or any Renewal Term upon written notice of termination to the other party at least ninety (90) days prior to the end of the Initial Term or any Renewal Term. ISO may terminate this Agreement without cause on thirty (30) days prior notice to Agent.

(c)   **Termination For Cause**. Any party may terminate this Agreement upon the occurrence of an Event of Default, as defined below.

6.3   **Event of Default**. Each of the following occurrences will constitute an "**Event of Default**"under this Agreement:

(a)   **Goodwill**. Agent engages in any act or omission that may damage the reputation, business, or goodwill of ISO, in which case ISO may terminate this Agreement on notice to Agent.

(b)   **False Representation**. Any representation or warranty made by Agent or any of its employees, officers, or directors proves to have been false or misleading in any material respect as of the date made, or becomes false or misleading at any time, then ISO may terminate this Agreement with notice to Agent.

(c)   **Regulatory Breach**. Where Agent is in breach of the Rules or where Bank determines that Agent is in breach of the Rules or other applicable laws, then ISO may terminate this Agreement immediately for cause and without opportunity for Agent to cure such breach.

(d)   **Breach**. Either party fails to observe any material obligation specified in this Agreement, and such failure is not cured within thirty (30) days of receipt of written notice thereof from the non-breaching party.  Notwithstanding the previous sentence, (i) the fourth such breach by Agent will be deemed an Event of Default by Agent without notice or the opportunity to cure; and (ii) if ISO determines that a breach by Agent is not reasonably capable of being cured, then no notice or opportunity to cure shall be provided to the Agent notwithstanding any provision herein to the contrary.

(e)   **Non-Solicitation or Confidentiality Breach.** Agent breaches any Confidentiality Obligations or any Non-Solicitation Obligations, in which case ISO may terminate this Agreement on notice to Agent.

6.4   **Injunctive Relief**. If Agent breaches any of the Non-Solicitation Obligations or Confidentiality Obligations of this Agreement, ISO will suffer irreparable harm and the total amount of monetary damages for any injury to such party will be impossible to calculate and therefore an inadequate

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

remedy. Accordingly, Agent agrees and understands that upon its actual or threatened breach of any of the provisions contained in Section 4 or 5, ISO shall be entitled to the immediate grant of injunctive relief without the requirement of posting a bond enjoining such actual or threatened violation by Agent, or any person acting in concert with Agent; and that ISO may exercise any other rights and seek any other remedies to which ISO may be entitled to at law, in equity and under this Agreement for any violation of such obligations.

6.5 **Post Termination Residuals**. The Residuals payable to Agent under this Agreement will be due to Agent for as long as ISO is deriving revenue from Vendor in respect of any Merchant, during and following the Term hereof unless: (a) this Agreement is terminated by ISO due to an Event of Default by Agent; (b) Agent is in breach of this Agreement (before or after termination of the Agreement), in which cases ISO's obligation to pay Residuals to the Agent shall terminate; or (c) Agent's rights in future Residuals are purchased as provided for below.

6.6 **Ownership of Merchants**. As between ISO and Agent, ISO has full and exclusive ownership rights in all Merchant Agreements and all information relating to Merchants. ISO may have the right to cause the Vendor to assign Vendor's rights in all or any of the Merchant Agreements to any third party at any time and for any reason, in accordance with ISO's agreement with the Vendor and ISO may dispose of its right to receive compensation in respect of some or all Merchants. If ISO disposes of some or all of its rights in respect of Merchants, ISO shall, at its discretion: (a) require the purchaser thereof to pay to the Agent all Residuals payable hereunder; and/or (b) pay Agent a single lump sum payment equivalent to the fair market value of the Agent's rights under this Agreement. Agent may solicit competing offers for single lump sum payment buyouts in order to ascertain fair market value, and if Agent receives higher offers for single lump sum payment buyouts, ISO will have the right of first refusal on the offer for a period of 30 days. After 30 days, if ISO does not decide to purchase receivables from Agent, Agent may sell receivables to another purchaser. ISO may also exercise (b) above without itself being bought out. Following completion of (a) or (b), ISO shall not be itself obliged to pay any additional Residuals or other compensation to Agent hereunder. ISO also has the right to change or terminate its sponsorship with Vendor and enter sponsorship with another Vendor at any time and without consent of Agent.

**Deleted:** , as determined by ISO in its sole discretion, without consent or notice from or to Agent. Such fair market value shall be no more than twelve (12) times the monthly Residuals paid hereunder calculated as an average of the previous three (3) months prior to the payment.

**7 INDEMNIFICATION AND LIMITATION OF LIABILITY.**

7.1 **Mutual Indemnification**. Agent shall save, defend, indemnify, reimburse and hold ISO, Vendor and their respective affiliates, shareholders, directors, officers, agents and employees harmless from all suits, actions, proceedings, losses, claims, liabilities, damages, collection fees incurred, costs and expenses (including reasonable attorneys' fees, expert witness fees and costs of defense) in connection with any consultation, negotiation, or actual action, suit, claim, losses or proceeding to which ISO shall be made a party because of any:

(a) acts or omissions of Agent or any Sub-Agent or any of their respective affiliates;
(b) violation of this Agreement or applicable Rule, including, without limitation, any and all fines or fees imposed by Visa, MasterCard or any credit card association or payment network;
(c) fraudulent or dishonest conduct or misrepresentation of Agent or any Sub-Agent;
(d) Event of Default or other breach of the terms hereof by Agent or any Sub-Agent;
(e) taxes with respect to Residuals;
(f) merchant losses; or
(g) negative balance sheet (including equipment costs).

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

7.2    **Selection of Counsel**. In the event ISO makes any claim under this provision, ISO shall have the right (subject to its right of reimbursement hereunder), but not the obligation, to defend the suit with counsel of its choice. Agent agrees to cooperate in such an action. Agent agrees not to settle any claim for which indemnification hereunder may be sought without prior written consent of ISO.  If an attorney is employed by ISO to enforce the terms of this Agreement, ISO shall be entitled to recover its reasonable attorney's fees (including reasonable fees for in-house attorneys) and court costs from Agent.

7.3    **Limitation of Liability**. THE SERVICES OF ISO ARE PROVIDED ON AN "AS-IS", "AS AVAILABLE" BASIS. ISO SHALL HAVE NO LIABILITY TO Agent WITH RESPECT TO ANY BREACHES BY VENDOR UNDER THE MERCHANT AGREEMENTS. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ISO EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTIES AND CONDITIONS, INCLUDING ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT, AS WELL AS ANY WARRANTIES THAT THE SERVICES PROVIDED BY ISO (AS DISTINCT FROM SERVICES PROVIDED BY VENDOR) OR THAT THE OPERATION OF SUCH SERVICES WILL BE INTERRUPTION OR ERROR FREE. ISO DOES NOT REPRESENT OR WARRANT THAT THE ISO ACCESS SYSTEM OR SERVICES WILL BE AVAILABLE, ACCESSIBLE, UNINTERRUPTED, TIMELY, SECURE, ACCURATE, COMPLETE, OR ENTIRELY ERROR-FREE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, ISO, ITS agents AND LICENSORS, SHALL NOT, UNDER ANY CIRCUMSTANCES, BE LIABLE, TO THE EXTENT PERMITTED BY APPLICABLE LAW, TO AGENT, MERCHANT OR ANY THIRD PARTY FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL OR EXEMPLARY DAMAGES, EVEN IF ISO HAS BEEN APPRISED OF THE LIKELIHOOD OF SUCH DAMAGES OCCURRING.  EXCEPT AS REQUIRED BY LAW, IN NO EVENT SHALL ISO'S LIABILITY (WHETHER BASED ON AN ACTION OR CLAIM IN CONTRACT, TORT OR OTHERWISE) TO AGENT, OR ANY THIRD PARTY, IN ANY WAY CONNECTED WITH OR ARISING OUT OF THIS AGREEMENT (AND ALL OTHER AGREEMENTS BETWEEN ISO AND AGENT) EXCEED THE LESSER OF THE AGGREGATE OF ALL FEES PAID TO THE AGENT DURING THE THREE (3) MONTHS PRIOR TO THE EVENT GIVING RISE TO LIABILITY OR $1,000.

7.4    **Merchant Losses**.    Agent shall be liable for losses caused by Merchants placed with Processor B – TSYS, as per the selections made on the first page of this Agreement. If Agent has checked that it is not liable for Merchant Losses (as defined below) on the first page hereof for Merchants at a given Vendor, then one-hundred percent of all losses due to Merchant fraud (collectively, "**Merchant Losses**") incurred by ISO or such Vendor will be borne by ISO, provided that Agent will be liable to ISO for any liability or loss incurred by ISO or such Vendor arising out of Agent's or any Sub-Agent's breach hereof, negligence, fraud, intentional wrongdoing or submission of a Merchant application containing information that was in any way false or misleading or that Agent should have known was false or misleading. If Agent has checked that it is liable for Merchant Losses for a given Vendor, then, regardless of the circumstances thereof, Agent shall be liable for all Merchant Losses and shall indemnify and hold ISO and such Vendor harmless from them. In addition to the foregoing, if Residuals for a given Merchant are negative, then Agent shall be liable for the amount thereof unless the cause of going negative is an ACH reject or reject which is corrected within thirty (30) days of the first attempt.

**Deleted:** and chargebacks

7.5    **Set-Off Right**. At any time that Agent is receiving Residuals from ISO, ISO shall have a security interest in any such commission(s) or incentives owed by ISO to Agent. Agent agrees that such amount of Residuals may be offset, utilized and applied to the payment of any outstanding accounts receivable balance or to satisfy any other of Agent's obligations to ISO or Vendorunder

this Agreement including, but not limited to, the payment of monetary reimbursement to Merchants or sales representatives, or the legal expenses associated with any claims against ISO or Vendor for which Agent bears responsibility as determined by ISO in its sole discretion following a thorough investigation of the facts and circumstances.

7.6 **Security Interest.** Agent hereby grants to ISO a lien on and security interest in all of Agent's Residuals, whether now existing or hereafter arising, to secure the Agent's obligations under this Agreement which security interest shall constitute a security agreement under the Uniform Commercial Code. Agent understands that ISO may file a UCC-1 Financing Statement to perfect the interest created under the UCC in connection with this Agreement.

**8 RELATIONSHIP OF THE PARTIES.**

8.1 **Independent Contractor.** It is understood that Agent is an independent contractor, and is not, and shall not be deemed to be, an employee of ISO for any purpose. Nothing in this Agreement or the parties' relationship shall be construed to give either party the power to direct and control the day-to-day activities of the other. The general conduct of work performed by Agent and its representatives and/or Sub-Agents under this Agreement shall be under Agent's sole control. Agent further understands and agrees that Agent shall be fully responsible for all tax obligations related to the payment of all Residuals earned by Agent hereunder. Agent is not entitled to workers compensation insurance, unemployment compensation insurance, pension or profit sharing or other benefits or rights of any kind or nature from or through ISO or Vendor. Nothing in this Agreement or the course of dealing of the parties shall be construed to constitute the parties hereto as partners, joint ventures or as agents or employees of one another or as authorizing either party to obligate the other in any manner. Agent shall not (a) bind ISO or Vendor to any contract or agreement, (b) incur any obligation on behalf of ISO or Vendor, (c) release, assign or transfer any agreement, claim, security or any other asset of ISO or Vendor, (d) borrow or lend any money in the name of ISO or Vendor, or (e) submit to any claim or liability related to the Merchant Agreements, allow judgment to be taken or confessed against ISO or Vendor. Agent, being an Independent Contractor, shall not receive as compensation, or be reimbursed, for any of the following: (a) additional work materials other than provided by the required Rules, (b) business facilities, telephone, automobile or any other equipment, (c) any ISO or Vendor employee benefit, (d) reimbursement for any other cost or expense incurred by Agent in its sales and marketing of the products and services on behalf of ISO or Vendor at ISO's or Vendor's direction.

8.2 **Compliance with Third Party and Legal Obligations.** Agent understands and acknowledges that all independent sales organizations selling or promoting Visa and MasterCard services must be properly registered with Visa and MasterCard, and that all agents associated with an ISO must therefore comply with the Rules, including all federal, state and local laws that impose requirements on Agent when dealing with merchants pursuant to this Agreement. Agent shall be bound to comply with all Rules. Any failure by the Agent to comply with the terms of this Section shall constitute a material breach of this Agreement. The individual signing this Agreement personally guarantees performance by the Agent hereunder.

8.3 **Independent Obligations.** The parties' independent obligations to comply with these legal and third-party obligations shall not be construed to give either party the power to direct and control the day-to-day activities of the other.

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

**9      GENERAL PROVISIONS.**

9.1     **Only Agreement**. This Agreement supersedes all prior agreements and understandings between the Agent and ISO and its directors, officers, shareholders, agents or representatives and constitutes the whole agreement between the parties hereto. Agent also represents that prior to this Agreement, Agent was neither employed by ISO or any of its affiliates nor has it acted in the role of independent contractor for ISO or any of its affiliates.

9.2     **Force Majeure**. Neither party shall be liable in damages or have the right to terminate this Agreement for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its control including, but not limited to, Acts of God, Government restrictions (including the denial or cancellation of any export or other necessary license), wars, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected.

9.3     **No Other Representations**. Except as required by the Rules, this Agreement is the entire Agreement between the parties respecting the subject matter hereof and there are no representations, warranties or commitments other than those expressed herein.

9.4     **Amendments and Waivers**. Except as provided for herein, no modification, amendment or waiver under this Agreement shall be valid unless in a writing and signed by the Agent and an officer of ISO. Notwithstanding the foregoing, ISO may amend the pricing applicable to Agent under this Agreement on notice to Agent delivered by e-mail.

9.5     **Credit and Criminal Background Check Authorization**. The undersigned Agent acknowledges and hereby voluntarily consents to ISO obtaining a background check on Agent, its shareholders, directors and officers, if any, and Agent authorizes and instructs ISO to obtain credit and criminal background and/or driving record reports from a third party (utilizing a social security number trace or other information such as name, address or driver's license number) as ISO deems necessary and appropriate in order to comply with ISO's obligations to Vendors and Merchants. This authorization and instruction will take effect upon the signature by Agent of this Agreement, and will last throughout the duration of Agent's involvement with ISO. ISO may be obliged to disclose the results of such background checks to Vendor. Agent consents to such disclosure, as it relates to Agent, its shareholders, directors and officers, if any.

9.6     **Notice**. Any notices or other communications required or permitted to  be given  pursuant to this Agreement shall be sufficient if hand delivered or sent by certified mail, return receipt requested, or by Federal Express or other nationally recognized express delivery service, (postage or other commercial delivery fees prepaid), to ISO at its address appearing on the first page hereof and to Agent at the address appearing on the first page hereof or at such other address as a party may designate for such purpose by notice so given to the other party.  Hand-delivered notices and notices sent by certified mail shall be deemed given and received when actually received. All other notices shall be deemed given and received on the date of the first attempted delivery as shown on the certified mail or delivery service receipt. Notwithstanding the foregoing, ISO may provide notice to Agent via e-mail to the e-mail address on the first page hereof or to such other e-mail address as is normally used by Agent in e-mail communications with ISO. Such e-mail notices shall be deemed given and received when sent, provided ISO does not receive an "undeliverable" notification from the e-mail service.

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

9.7 **Successors and Assigns**. Agent may not assign this Agreement without the prior written consent of ISO and any unauthorized attempted assignment will be null and void. ISO may assign its rights and obligations hereunder to a third party. If Agent enters into an asset sale, purchase or stock sale or exchange agreement with a third party which would effectuate a sale or merger of 20% of more of the equity or assets in Agent's business or rights hereunder without ISO's written consent, ISO will have the right to terminate this Agreement immediately. Except as set forth above, this Agreement shall inure to the successors and permitted assigns of the parties hereto. In the case of a single member LLC or sole proprietorship, the death of the single member or the sole proprietor shall, in ISO's discretion, be deemed a default hereunder.

9.8 **Governing Law, Choice of Law and Forum**. This Agreement shall be construed in accordance with and governed by the laws of the State of New York without regard to conflicts of law principles. Any legal actions or proceedings brought to enforce the terms of this Agreement shall be filed in a court of competent jurisdiction within the State of New York and in the county where ISO has its principal place of business identified on the first page hereof.

9.9 **Attorneys' Fees**. As a consequence of any action, suit or proceeding brought under this Agreement, the prevailing party shall be entitled to its costs, expenses, and if law permits, its reasonable attorneys' fees. If ISO retains an attorney to enforce compliance with the terms hereof or to collect any amounts owing from Agent hereunder, ISO may deduct the fees for such attorney from amounts payable to Agent hereunder.

9.10 **Scan Signature**. This Agreement may be executed in counterparts, each which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement may be executed by the exchange of scanned copies or faxed copies of signed copies hereof.

9.11 **Severability**. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

9.12 **Construction Capacity and Counsel**. For purposes of construction, this Agreement will be deemed as being drafted by both parties, equally. Agent is executing this Agreement in its/his/her capacity as a business and not as an individual consumer. Agent has had opportunity to seek legal advice prior to the execution hereof.

9.13 **Survival**. The following provisions survive termination of this Agreement: 1.11 Sub-Agents, 2.2 Residuals, 3 Representations and Warranties, 4 Non-Solicitation, 5 Confidentiality, 6 Term and Termination, 7 Indemnification, and 9 General.

9.14 **Bonus Chargeback.** Agent shall be entitled to a single lump sum bonus of (See Below) in respect of each Merchant approved by ISO. However, if a Merchant for which such a bonus was paid ceases processing or terminates their Merchant Agreement within 6 consecutive months of the first transaction that they process under it, then Agent shall repay the amount of the bonus to ISO or, at the discretion of ISO, ISO shall deduct the amount thereof from future payments to Agent hereunder.

**Deleted:** 13

9.15 **Trademark.** 'Merchant Industry LLC' is a registered trademark of ISO and may not be used except as expressly authorized herein

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

9.16 **Third-party Income.** In the event Agent submits a Merchant to ISO for consideration for Services, but the submission fails to meet program guidelines, ISO retains the unilateral right to assign the Merchant's file, without notice to the Agent, to a third-party selected by ISO for consideration of Services. Notwithstanding the foregoing, and in such event, the Agent's residual income from said Merchant shall remain as set forth in Exhibit B hereto.

**Deleted:** <#>**Bonus.** Based on Agent's performance in accordance with Schedule B hereto, ISO maintains a unilateral right to adjust bonuses without notice to the Agent. Any such change may only be applied prospectively.

9.17 **Non-Disparagement.** For the term of this Agreement, and for two years thereafter, neither Agent, nor any of its affiliates or agents, or Sub-agents shall make any statements, comments, or take any actions whatsoever which would in any way disparage ISO, its affiliates corporations, officers, directors, employees, agents, joint adventurers, products, policies, or referral sources, nor shall it encourage, assist, or participate with any third party in doing so.

**Deleted:** <#>**Security Interest.** If Agent's balance sheet is negative and so remains for period of ninety (90) days or more, Agent hereby grants to ISO, as additional security, a security interest and lien on its corporation and/or its business; and ISO shall have the right to file a UCC financing statement with respect thereof.

**The parties have signed this Agreement as of the Effective Date:**

| **Agent** | **Merchant Industry, LLC** |
| --- | --- |
| ____________________ | ____________________ |
| Name: levitleonid@gmail.com | Name: Leo Vartanov |
| Title: Partner | Title: CEO |
| Date: | Date: |
| Business Name: MLL Marketing Inc. | |

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

**Schedule "A"**
**Residuals for Agent**

Residuals shall be a % of the net revenue to ISO in respect of the credit and debit card processing of Merchants on the line items set out below and above the pricing set out below.

Residuals shall be calculated after deducting the items set out in the pricing grid below and other costs and expenses of ISO related to Agent and Merchants. In so far as ISO's costs associated with the services procured by Merchants increase, compensation hereunder may correspondingly decrease. New fees and services charged to Merchants following the date of this Agreement will not necessarily lead to increases in Residuals.

| Processor Name | First Data | Tsys | First Data T2 -65% |
|---|---|---|---|
| Interchange & Assessments | Pass through | Pass through | Pass through |
| Debit Network Fees | Pass through | Pass through | Pass through |
| Association Fees | Pass through | Pass through | Pass through |
| Authorization Fees -Dial | $0.0275 | $0.0370 | $0.0275 |
| Authorization Fees –IP/Non Dial /SSL / Datawire | $0.0275 | $0.0370 | $0.0275 |
| Authorization Fees –Debit/Ebt/Wex/Voyager/Oth | $0.0375 | $0.0370 | $0.0375 |
| Capture Fees – V/MC | $0.0250 | $0.0230 | $0.0300 |
| Capture Fees - Other | $0.0375 | $0.0230 | $0.0300 |
| Micros Authorization Surcharge | $0.0400 | $0.0400 | $0.0400 |
| Debit Gateway Switch Fee | $0.0100 | $0.0100 | $0.0100 |
| ACH Reject Fee | $25.00 | $25.00 | $25.00 |
| Cancellation Fees + Annual Fees | $0.00 | $0.00 | $0.00 |
| Minimum Monthly Processing | $0.00 | $0.00 | $0.00 |
| Retrieval Request - 12B Letters | $5.00 | $4.00 | $10.00 |
| Account on File | $7.00 | $7.00 | $7.00 |
| Statement Fee | $0.50 | $0.50 | $0.50 |
| Discount fee on gross bankcard sales | 0.01% | 0.01% | 0.01% |
| Batch Header | $0.030 | $0.030 | $0.030 |
| Help desk & Customer service calls | $4.00 | $7.00 | $4.00 |
| Online Access | $2.95 | $2.95 | $2.95 |
| Chargeback and Debit Adjustment | $12.00 | $8.00 | $12.00 |
| Reprogram Fee (Upon Request)/Deployment Fee | $25.00 | $25.00 | $25.00 |
| Voice Authorization Fee | $0.98 | $0.98 | $0.98 |
| IRS- Invalid TIN Fee | $19.95 | $19.99 | $19.95 |
| IRS-Regulatory Product Fee | $3.95 | $3.95 | $3.95 |
| PCI Compliance Fee -Annual | $104.00 | $104.00 | $104.00 |
| PCI Non-Compliance Monthly Fee | $19.99 | $19.99 | $19.99 |
| AVS-Voice Inquiry | $1.75 | $1.75 | $1.75 |
| AVS- Electronic Request | $0.025 | $0.025 | $0.025 |
| Return Per Item Fee | $0.025 | $0.025 | $0.025 |

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

| Postage Fee | Pass through | Pass through | Pass through |
|---|---|---|---|
| American Express – Opt blue | 0.30% | 0.25% | 0.30% |
| Welcome Kit including merchant plates | $5.50 | $5.50 | $5.50 |
| ISO Access Mobile Pay Set Up Cost | $25.00 | $25.00 | $25.00 |
| ISO Access Mobile Pay Monthly Cost | $15.00 | $15.00 | $15.00 |
| Apriva Set Up Cost | $25.00 | $25.00 | $25.00 |
| Apriva Monthly Cost | $15.00 | $15.00 | $15.00 |
| Apriva Per Auth Surcharge | $0.0125 | $0.0125 | $0.0125 |
| ISO Mobile Pay Set Up Cost | $25.00 | $25.00 | $25.00 |
| ISO Mobile Pay Monthly Cost | $18.00 | $18.00 | $18.00 |
| Clover GO Monthly Cost | $6.00 | N/A | $6.00 |
| Clover Service Monthly Cost | $30.00 | $30.00 | $30.00 |
| Terminal Maintenance / Support Cost | $6.95 | $6.95 | $6.95 |
| Manual Ach / Payment Gateway | $15.00 | $15.00 | $15.00 |
| High Risk MCC Surcharge / Other | 35% | 10 bp | 35% |
| High Risk – Chargeback Surcharge Count | 35% | 5 bp | 35% |
| High Risk – Chargeback Surcharge $ | 35% | 5 bp | 35% |

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

**Schedule "B"**

Select **ONE** Program by Checking below

NO BONUS-

PERCENTAGE OF NET PROFITS:

| Number of Approved Merchants submitted by Contractor **per month and adjusted each calendar quarter.** * | **Percentage of the "net profits"** from Approved Merchants and paid to Contractor during **next calendar quarter.** |
|---|---|
| | N/A |
| | |
| | |
| | |

With Bonus-☒

PERCENTAGE OF NET PROFITS:

| Number of Approved Merchants submitted by Contractor **per month and adjusted each calendar quarter.** * | **Percentage of the "net profits"** from Approved Merchants and paid to Contractor during **next calendar quarter.** |
|---|---|
| | 70% / $200 |
| | |
| | |
| | |
| | |

.

| Bankcard Volume* | Bonus Payout** |
|---|---|
| | |
| | |
| | |

*Bankcard Volume consists of Visa, MasterCard and Discover only.

**Bonuses are paid after a merchant has been approved and begins processing with Merchant Industry, LLC. Bonuses are subject to chargeback if the merchant cancels their service with Merchant Industry, LLC.

**Bonuses will be paid only on TSYS and First Data platforms.

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

**Agent ACH Consent**

Leonid Levit ("**Agent**") desires to effect settlement of credits and debits from the Designated Account (identified below) by means of ACH and/or wire transfer in conjunction with its agent agreement for the solicitation of merchants for ISO. In accordance with this desire, Agent authorizes ISO and/or its affiliates to initiate debit and credit entries to the Designated Account. Agent agrees to maintain sufficient funds in the Designated Account to cover debit transactions. By signing this authorization, Agent states that it has authority to agree to such transactions and that the Designated Account indicated is a valid and legitimate account for the handling of these transactions. This authority is to remain in effect until ISO receives written notice from Agent revoking it. This authorization is for the payment of residuals, or any other sums owed to Agent or amounts payable from Agent to ISO. Agent also certifies that the appropriate authorizations are in place to allow Agent to authorize this method of settlement. All changes to the identification of the Designated Account under this authorization must be made in writing in accordance with the Agreement. Agent understands that if the information supplied as to the ABA Routing Number and Account Number of the Designated Account is incorrect, and funds are incorrectly deposited, ISO will attempt to assist Agent in the recovery of such funds but has no liability as to restitution of the same. ISO's assistance in recovering the funds, where available, will be billed to Agent at ISO's current hourly rate for such work. Agent acknowledges that the origination of ACH transactions to the Designated Account must comply with the provisions of U.S.law.

DETAILS FOR REPETITIVE TRANSFERS TO AND FROM Designated Account:

Designated Account INFORMATION:

(Name of Bank): ________________________________

(City, State): ______________________________________

(Bank Routing #): ________________________________

(Account type): ________________________________

(Account number): ________________________________

(Messages): ______________________________________

[Attach a copy of a blank cancelled check for the above account.]

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

**PERSONAL GUARANTEE**

TO: **Merchant Industry, LLC**

Reference is made to that certain Merchant Industry, LLC Independent Sales Contractor Agreement entered into between Merchant Industry, LLC ("**ISO**") and MLL Marketing Inc. (the "**Agent**") as of____________________, 2018 (the "**Agreement**"). Unless otherwise defined herein, capitalized terms herein shall have the meanings ascribed thereto in the Agreement. For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned Guarantor hereby fully, irrevocably and unconditionally guarantees to ISO the full and complete performance by the Agent of all the Agent's obligations, present and future, to ISO (the "**Guarantee**") under or pursuant to the Agreement. The liability of the Guarantor under the Guarantee shall be joint and several with the Agent. ISO does not need to exhaust its recourses against the Agent or any other person or entity before being entitled to full payment from the Guarantor under this Guarantee.

**SIGNED** as of this_________day of_________________, 2018.

Guarantor: (name): MLL Marketing Inc.

Guarantor: (signature): ________________________________________

Guarantor Office Tel. No.: ________________________________________

Guarantor Cell No.: ________________________________________

Guarantor Address: ________________________________________

ACKNOWLEDGED and ACCEPTED by:

**Merchant Industry, LLC**

Name: Leo Vartanov
Title: CEO
Date:

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

Form **W-9** (Rev. November 2017) Department of the Treasury Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

▶ **Go to *www.irs.gov/FormW9* for instructions and the latest information.**

**Give Form to the requester. Do not send to the IRS.**

Print or type. See Specific Instructions on page 3.

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

2 Business name/disregarded entity name, if different from above
MLL Marketing Inc.

3 Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

*(Applies to accounts maintained outside the U.S.)*

5 Address (number, street, and apt. or suite no.) See instructions.
3029 Brighton 12th Street, Apt. A6

Requester's name and address (optional)

6 City, state, and ZIP code
Brooklyn, NY 11235

7 List account number(s) here (optional)

## Part I Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN,* later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

**or**

**Employer identification number**

EIN

## Part II Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here** | **Signature of U.S. person ▶** | **Date ▶**

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments**. For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9.*

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

*later.*

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding,

*later.*

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

New York State Department of Taxation and Finance
**New York State and Local Sales and Use Tax**

# Resale Certificate

**ST-120** (1/11)

| Name of seller | | | Name of purchaser | | |
|---|---|---|---|---|---|
| Merchant Industry | | | | | |
| Street address | | | Street address | | |
| 36-36 33rd Street Suite 206 | | | 3029 Brighton 12th Street, Apt. A6 | | |
| City | State | ZIP code | City | State | ZIP code |
| Astoria | NY | 11106 | Brooklyn, NY 11235 | | |

Mark an ***X*** in the appropriate box: ☐ Single-use certificate ☒ Blanket certificate
Temporary vendors must issue a single-use certificate.

**To the purchaser:**
You may not use this certificate to purchase items or services that are not for resale. If you purchase tangible personal property or services for resale, but use or consume the tangible personal property or services yourself in New York State, you must report and pay the unpaid tax directly to New York State. Any misuse of this certificate will result in tax liabilities and substantial penalty and interest.

## Purchaser information – *please type or print*

I am engaged in the business of Merchant Services and principally sell Credit Card Terminals

*(Contractors may not use this certificate to purchase materials and supplies.)*

## Part 1 – To be completed by registered New York State sales tax vendors

**I certify that I am:**

☒ a New York State vendor (including a hotel operator or a dues or admissions recipient), show vendor or entertainment vendor. My valid *Certificate of Authority* number is __________

☐ a New York State temporary vendor. My valid *Certificate of Authority* number is __________ and expires on __________

**I am purchasing:**

☒ **A.** Tangible personal property (other than motor fuel or diesel motor fuel)
- for resale in its present form or for resale as a physical component part of tangible personal property;
- for use in performing taxable services where the property will become a physical component part of the property upon which the services will be performed, or the property will actually be transferred to the purchaser of the taxable service in conjunction with the performance of the service; or

☐ **B.** A service for resale, including the servicing of tangible personal property held for sale.

## Part 2 – To be completed by non-New York State purchasers

**I certify that I am** not registered nor am I required to be registered as a New York State sales tax vendor. I am registered to collect sales tax or value added tax (VAT) in the following state/jurisdiction __________ and have been issued the following registration number __________ (If sales tax or VAT registration is not required and a registration number is not issued by your home jurisdiction, indicate the location of your business and write ***not applicable*** on the line requesting the registration number.)

**I am purchasing:**

☒ **C.** Tangible personal property (other than motor fuel or diesel motor fuel) for resale, and it is being delivered directly by the seller to my customer or to an unaffiliated fulfillment services provider in New York State.

☐ **D.** Tangible personal property for resale that will be resold from a business located outside New York State.

**Certification:** I certify that the above statements are true, complete, and correct, and that no material information has been omitted. I make these statements and issue this exemption certificate with the knowledge that this document provides evidence that state and local sales or use taxes do not apply to a transaction or transactions for which I tendered this document and that willfully issuing this document with the intent to evade any such tax may constitute a felony or other crime under New York State Law, punishable by a substantial fine and a possible jail sentence. I understand that this document is required to be filed with, and delivered to, the vendor as agent for the Tax Department for the purposes of Tax Law section 1838 and is deemed a document required to be filed with the Tax Department for the purpose of prosecution of offenses. I also understand that the Tax Department is authorized to investigate the validity of tax exclusions or exemptions claimed and the accuracy of any information entered on this document.

| Type or print name and title of owner, partner, or authorized person of purchaser | |
|---|---|
| | |
| Signature of owner, partner, or authorized person of purchaser | Date prepared |
| | |

DocuSign Envelope ID: 7B865BEF-2D18-4444-BCCC-7805C3EE400A

**Substantial penalties will result from misuse of this certificate.**

# Instructions

Form ST-120, *Resale Certificate*, is a sales tax exemption certificate. **This certificate is only for use by a purchaser who:**

**A** – is registered as a New York State sales tax vendor and has a valid *Certificate of Authority* issued by the Tax Department and is making purchases of tangible personal property (other than motor fuel or diesel motor fuel) or services that will be resold or transferred to the purchaser's customers, **or**

**B** – is not required to be registered with the New York State Tax Department;

– is registered with another state, the District of Columbia, a province of Canada, or other country, or is located in a state, province, or country which does not require sellers to register for sales tax or VAT purposes; and

– is purchasing items for resale that will be either:

1) delivered by the seller to the purchaser's customer or to an unaffiliated fulfillment service provider located in New York State, or
2) delivered to the purchaser in New York State, but resold from a business located outside the state.

**Note:** For purposes of 1) above, delivery by the seller includes delivery in the seller's own vehicle or by common carrier, regardless of who arranges for the transportation.

## Non-New York State purchasers: registration requirements

If, among other things, a purchaser has any place of business or salespeople in New York State, or owns or leases tangible personal property in the State, the purchaser is required to be registered for New York State sales tax.

A business must register (unless the business can rebut the statutory presumption as described in TSB-M-08(3.1)S, *Additional Information on How Sellers May Rebut the New Presumption Applicable to the Definition of Sales Tax Vendor as Described in TSB-M-08(3)S* ) for New York State sales tax if the business enters into agreements with residents of New York State under which the residents receive consideration for referring potential customers to the business by links on a Web site or otherwise, and the value of the sales in New York State made by the business through those agreements totals more than $10,000 in the preceding four sales tax quarters. See TSB-M-08(3)S, *New Presumption Applicable to Definition of Sales Tax Vendor,* and TSB-M-08(3.1)S.

Also see TSB-M-09(3)S, *Definition of a Sales Tax Vendor is Expanded to Include Out-of-State Sellers with Related Businesses in New York State,* for information on sales tax registration requirements for out-of-state businesses with New York affiliates.

A purchaser who is not otherwise required to be registered for New York State sales tax may purchase fulfillment services from an **unaffiliated** New York fulfillment service provider and have its tangible personal property located on the premises of the provider without being required to be registered for sales tax in New York State.

If you need help determining if you are required to register because you engage in activity in New York State, contact the department (see *Need help?*).

If you meet the registration requirements and engage in business activities in New York State without possessing a valid *Certificate of Authority,* you will be subject to penalty of up to $500 for the first day on which you make a sale or purchase, and up to $200 for each additional day, up to a maximum of $10,000.

## Limitations on use

Contractors cannot use this certificate. They must either:

- issue Form ST-120.1, *Contractor Exempt Purchase Certificate*, if the tangible personal property being purchased qualifies for exemption as specified by the certificate, or
- issue Form AU-297, *Direct Payment Permit*, or
- pay sales tax at the time of purchase.

Contractors are entitled to a refund or credit of sales tax paid on materials used in repairing, servicing or maintaining real property, if the materials are transferred to the purchaser of the taxable service in conjunction with the performance of the service. For additional information, see Publication 862, *Sales and Use Tax Classifications of Capital Improvements and Repairs to Real Property*.

## To the Purchaser

Enter all the information requested on the front of this form.

You may mark an ***X*** in the *Blanket certificate* box to cover all purchases of the same general type of property or service purchased for resale. If you do not mark an ***X*** in the *Blanket certificate* box, the certificate will be deemed a *Single-use certificate*. Temporary vendors may not issue a blanket certificate. A *temporary vendor* is a vendor (other than a show or entertainment vendor), who, in no more than two consecutive quarters in any 12-month period, makes sales of tangible personal property or services that are subject to tax.

This certificate does not exempt prepaid sales tax on cigarettes. This certificate may not be used to purchase motor fuel or diesel motor fuel.

## Misuse of this certificate

Misuse of this exemption certificate may subject you to serious civil and criminal sanctions in addition to the payment of any tax and interest due. These include:

- A penalty equal to 100% of the tax due;
- A $50 penalty for each fraudulent exemption certificate issued;
- Criminal felony prosecution, punishable by a substantial fine and a possible jail sentence; and
- Revocation of your *Certificate of Authority*, if you are required to be registered as a vendor. See TSB-M-09(17)S, *Amendments that Encourage Compliance with the Tax Law and Enhance the Tax Department's Enforcement Ability*, for more information.

## To the Seller

If you are a New York State registered vendor and accept an exemption document, you will be protected from liability for the tax, if the certificate is valid.

The certificate will be considered valid if it was:

- accepted in good faith;
- in the vendor's possession within 90 days of the transaction; and
- properly completed (all required entries were made).

A certificate is accepted in good faith when a seller has no knowledge that the exemption certificate is false or is fraudulently given, and reasonable ordinary due care is exercised in the acceptance of the certificate.

You must get a properly completed exemption certificate from your customer no later than 90 days after the delivery of the property or the performance of the service. When you receive a certificate after the 90 days, both you and the purchaser are subject to the burden of proving that the sale was exempt, and additional documentation may be required. An exemption certificate received on time that is not properly completed will be considered satisfactory if the deficiency is corrected within a reasonable period. You must also maintain a method of associating an invoice (or other source document) for an exempt sale made to a customer with the exemption certificate you have on file from that customer.

**Invalid exemption certificates –** Sales transactions which are not supported by valid exemption certificates are deemed to be taxable retail sales. The burden of proof that the tax was not required to be collected is upon the seller.

**Retention of exemption certificates - You must keep this certificate for at least three years** after the due date of the return to which it relates, or the date the return was filed, if later.

## Need help?

**Internet access: *www.tax.ny.gov***
(for information, forms, and publications)

| | |
|---|---|
| **Sales Tax** Information Center: | (518) 485-2889 |
| To order forms and publications: | (518) 457-5431 |
| **Text Telephone (TTY) Hotline** (for persons with hearing and speech disabilities using a TTY): | (518) 485-5082 |

# Exhibit C

WOODROW&PELUSO

Taylor Smith <tsmith@woodrowpeluso.com>

**Leonid Levit / MLL Marketing Inc. - 10 Of X**

1 message

**Leonid Levit** <levitleonid@gmail.com> Fri, Jan 15, 2021 at 2:21 PM
To: Taylor Smith <tsmith@woodrowpeluso.com>

---------- Forwarded message ---------
From: **Thomas Costa** <thomas@unlockedbiz.com>
Date: Thu, Aug 1, 2019 at 7:16 AM
Subject: Re: ISO agreement - redlines
To: Leonid Levit <levitleonid@gmail.com>
Cc: Alex Puzaitzer <alexp@debtrelieflaw.ca>, Paul Vincent <paul@unlockedbiz.com>

I will work on having that together by Monday.

On Aug 1, 2019, at 5:22 AM, Leonid Levit <levitleonid@gmail.com> wrote:

> Who is responsible for creating the matrix of terminals and POS systems? Is that you Tom? I just dont know who to followup with about it thats why I am asking.
>
> Let me ask when people can do training today.
>
> On Wed, Jul 31, 2019 at 8:10 AM Thomas Costa <thomas@unlockedbiz.com> wrote:
>
> > I believe we will only need to train the team leader on the portal to send out applications
> >
> > We also need to create a matrix for equipment that a rep can easily identify what terminal or POS system they should sell and for what price
> >
> > On Jul 31, 2019, at 7:40 AM, Leonid Levit <levitleonid@gmail.com> wrote:
> >
> > > Training should happen tomorrow honestly for us so I can get the call center trained on Friday. Let me know what time tomorrow works for you guys?
> > >
> > > Did they adjust the verbiage?
> > >
> > > Best,
> > >
> > > LL
> > >
> > > On Tue, Jul 30, 2019 at 10:29 PM Alex Puzaitzer <alexp@debtrelieflaw.ca> wrote:
> > >
> > > > Reps will be ready whenever we are.
> > > > If we starting on Monday then we'll have them in already in place, we just have to coordinate a day.
> > > >
> > > > Sent from my iPhone
> > > >
> > > > On Jul 30, 2019, at 8:36 PM, Thomas Costa <thomas@unlockedbiz.com> wrote:
> > > >
> > > > > Once they send us final and we have it signed we can schedule the training
> > > > >
> > > > > When are we planning on training the call center reps?
> > > > >
> > > > > On Jul 30, 2019, at 8:34 PM, Alex Puzaitzer <alexp@debtrelieflaw.ca> wrote:
> > > > >
> > > > > > Also, let's schedule training
> > > > > >
> > > > > > Sent from my iPhone
> > > > > >
> > > > > > On Jul 30, 2019, at 8:32 PM, Alex Puzaitzer <alexp@debtrelieflaw.ca> wrote:
> > > > > >
> > > > > > > Yeah let them put the wording where is needed, which I thought will be done today, and get it signed.
> > > > > > >
> > > > > > > Sent from my iPhone
> > > > > > >
> > > > > > > On Jul 30, 2019, at 8:16 PM, Paul Vincent <paul@unlockedbiz.com> wrote:
> > > > > > >
> > > > > > > > Let's go!!!
> > > > > > > >
> > > > > > > > Sent from my iPhone
> > > > > > > >
> > > > > > > > On Jul 30, 2019, at 8:07 PM, Alex Puzaitzer <alexp@debtrelieflaw.ca> wrote:
> > > > > > > >
> > > > > > > > > I think I can live with that at this time, so we can move forward and see.
> > > > > > > > >
> > > > > > > > > Sent from my iPhone
> > > > > > > > >
> > > > > > > > > On Jul 30, 2019, at 5:53 PM, Thomas Costa <thomas@unlockedbiz.com> wrote:
> > > > > > > > >
> > > > > > > > > > See below. Let me know
> > > > > > > > > >
> > > > > > > > > > Begin forwarded message:
> > > > > > > > > >
> > > > > > > > > > > **From:** Ramon Toribio <ramon.toribio@merchantindustry.net>
> > > > > > > > > > > **Date:** July 30, 2019 at 3:44:28 PM EDT
> > > > > > > > > > > **To:** Tom Costa <tcosta824@gmail.com>
> > > > > > > > > > > **Cc:** Paylessa Administrator <admin@paylessa.com>
> > > > > > > > > > > **Subject: ISO agreement - redlines**
> > > > > > > > > > >
> > > > > > > > > > > Hey Tom,
> > > > > > > > > > >
> > > > > > > > > > > Below are the points of discussion from our call and concessions we propose:
> > > > > > > > > > >
> > > > > > > > > > > **1.5) Disclosing relationships**- We will remove this clause
> > > > > > > > > > >
> > > > > > > > > > > **1.9) Training**- Our acquiring bank & platform provider requires every agent of ours to agree to train and take responsibility of their employees/merchants in regards to educating them on equipment etc. In any event, the verbiage does not hold Agent accountable to any fines, or residual forfeiture due to lack of training. This clause has to stay.
> > > > > > > > > > >
> > > > > > > > > > > **6.6) Ownership sale**- We will revise to reflect first right of refusal verbiage.
> > > > > > > > > > >
> > > > > > > > > > > **7.4) TSYS liability**- This clause we agreed stays.
> > > > > > > > > > >
> > > > > > > > > > > **9.16) Bonus chargeback**- We can revisit this clause at the 7 month mark, and if your portfolio of business at 100% profit, is equal to or greater than $150.00 per merchant, we will drop the bonus charge back period from 12 months to 7 months retroactively and going forward.

**9.18) Security interest**- Instead of 90 days as stated on ISO agreement, we can give you 180 days to cure any negative balance.

**Tom-** Let me know if this works so that I can send to lawyers for final draft.

Thanks,

**Ramon Toribio| Executive Vice President**
Ramon.Toribio@Swipe4Free.com

Main: (888) 361-6498 | Direct Number: (718) 577-5144 | Mobile: 201-375-0412

<image001.png>
**Meet Merchant Industry!**
**MWAA Conference  July 17th – 18th Schaumburg, IL**
**Vapers Carnivale – July 27th – 28th Raleigh, NC**

<image002.png>

| Merchant Industry | Swipe4free | First US Funding | ISO Access CRM |
|---|---|---|---|
| 36-36 33rd Street, Ste 206 | 36-36 33rd Street, Ste 206 | 36-36 33rd Street, Ste 206 | 36-36 33rd Street, Ste 206 |
| Long Island City, NY 11106 | Long Island City, NY 11106 | Long Island City, NY 11106 | Long Island City, NY 11106 |
| www.merchantindustry.com | www.swipe4free.com | www.firstusfunding.com | www.isoaccess.com |

Please consider the environment before printing this email.

The information contained herein, including any attachments, is proprietary and confidential and is intended for the exclusive use of the addressee. The information is intended only for the use of the individual or entity to which it is addressed and may contain information which is privileged, private, confidential or exempt from disclosure under law. If the reader of this email is not the intended recipient (or the employee or agent responsible for delivering the email to the intended recipient) please be warned that any publication, distribution or copying of this email is prohibited. If you have received this email in error, please notify us immediately by reply e-mail and destroy all copies.

# Exhibit D

WOODROW&PELUSO

Taylor Smith <tsmith@woodrowpeluso.com>

## Leonid Levit / MLL Marketing Inc. - 11 Of X

1 message

**Leonid Levit** <levitleonid@gmail.com> Fri, Jan 15, 2021 at 2:23 PM
To: Taylor Smith <tsmith@woodrowpeluso.com>

---------- Forwarded message ---------
From: **Leonid Levit** <levitleonid@gmail.com>
Date: Mon, Aug 5, 2019 at 9:02 AM
Subject: Re: Please DocuSign: standard agreement- mutual indemnification.pdf
To: andrea lopez <andrea.lopez@merchantindustry.net>, Tom Costa <thomas@unlockedbiz.com>, Paul Orena <pvomarketing@gmail.com>

Hey Andrea,

Everything is signed on the docu sign if you take a look at it. I am traveling and just do not physically have my check book. I will be back in August 14th and can provide it then.

Can we essentially begin now and I provide the blank check once I return home? It is the only missing part of the contract.

Best,

Leonid Levit

646-775-0451

On Fri, Aug 2, 2019 at 9:36 AM Leonid Levit <levitleonid@gmail.com> wrote:

> Hey Andrea,
>
> Everything is signed I am traveling and just do not physically have my check book. I will be back in 2 weeks and can provide it then.
>
> Can we essentially begin now and I provide the blank check once I return home? It is the only missing part of the contract.
>
> Best,
>
> Leonid Levit
>
> 646-775-0451
>
> 
> Virus-free. www.avg.com
>
> On Fri, Aug 2, 2019 at 9:27 AM andrea lopez via DocuSign <dse@docusign.net> wrote:
>
> > DocuSign
> >
> > andrea lopez sent you a document to review and sign.
> >
> > **REVIEW DOCUMENT**
> >
> > **andrea lopez**
> > andrea.lopez@merchantindustry.net
> >
> > levitleonid@gmail.com,
> >
> > Please DocuSign standard agreement- mutual indemnification.pdf
> >
> > Thank You, andrea lopez

**Do Not Share This Email**
This email contains a secure link to DocuSign. Please do not share this email, link, or access code with others.

**Alternate Signing Method**
Visit DocuSign.com, click 'Access Documents', and enter the security code:
C23C34D1DA9647CAA7A6C9673E95BF1A1

**About DocuSign**
Sign documents electronically in just minutes. It's safe, secure, and legally binding. Whether you're in an office, at home, on-the-go -- or even across the globe -- DocuSign provides a professional trusted solution for Digital Transaction Management™.

**Questions about the Document?**
If you need to modify the document or have questions about the details in the document, please reach out to the sender by emailing them directly.

If you are having trouble signing the document, please visit the Help with Signing page on our Support Center.

 Download the DocuSign App

This message was sent to you by andrea lopez who is using the DocuSign Electronic Signature Service. If you would rather not receive email from this sender you may contact the sender with your request.

---

 Virus-free. www.avg.com

# Exhibit E

WOODROW&PELUSO

Taylor Smith <tsmith@woodrowpeluso.com>

## Leonid Levit / MLL Marketing Inc. - 1 Of X

1 message

**Leo Levit** <mmarketing617@gmail.com> Fri, Jan 15, 2021 at 2:13 PM
To: tsmith@woodrowpeluso.com

I would wait until all of the emails are sent in order to get a better picture of these emails, but I am numbering the correspondences for you so you have a better idea of what is going on.

---------- Forwarded message ---------
From: **Alex P** <Alexp@debtrelieflaw.ca>
Date: Fri, Aug 9, 2019 at 12:14 PM
Subject: Fwd: Terminals and Equipment
To: Leo Levit <mmarketing617@gmail.com>

FYI
Al Puzi
Alexp@debtrelieflaw.ca
(917) 579-7722

Begin forwarded message:

**From:** Thomas Costa <thomas@unlockedbiz.com>
**Subject: Fwd: FW: Terminals and Equipment**
**Date:** August 9, 2019 at 12:07:11 PM EDT
**To:** Leonid Levit <levitleonid@gmail.com>, Alex P <alexp@debtrelieflaw.ca>

Did you guys see this?

---------- Forwarded message ---------
From: <glenn.mondry@swipe4free.com>
Date: Fri, Aug 9, 2019 at 11:51 AM
Subject: FW: Terminals and Equipment
To: <tcosta824@gmail.com>
Cc: Thomas Costa <thomas@unlockedbiz.com>

resending

**From:** Glenn <glenn.mondry@swipe4free.com>
**Sent:** Thursday, August 08, 2019 8:37 PM
**To:** Tom Costa <tcosta824@gmail.com>
**Subject:** Fwd: Terminals and Equipment

Glenn Mondry| V.P. of Business Development

Glenn.Mondry@swipe4free.com

Main Number: 866-811-1005 x179| Mobile Number: 347-385-4161

Get Outlook for Android

Sent: Thursday, August 8, 10:51 AM

Subject: RE: Terminals and Equipment

Hi All,

Hope all is going well.  I am sending you our Google Drive Link. https://drive.google.com/drive/folders/1yKLTU3j2TRDQ7e9jd5MGBMdkTcsvM6f-

This link has all the pricing(purchase prices and Leasing caps), marketing materials, TSYS and First Data Applications (for both Traditional Processing and Cash Discount) and much more.

I also attached a POS Information trifold as well as some other Marketing pdfs for you to share with your team.

Would you be available for quick call today and I can walk your through all the documents?

**Glenn Mondry| V.P. of Business Development**

**Glenn.Mondry@swipe4free.com**

ISO Support: 888-361-6498| Main Number: 866-811-1005 x179| Mobile Number: 347-385-4161

signature_199327226

**From:** Thomas Costa <thomas@unlockedbiz.com>

**Sent:** Thursday, August 08, 2019 10:24 AM

**To:** Ramon Toribio <ramon.toribio@merchantindustry.net>; glenn.mondry@swipe4free.com; Eric Bernstein <ericscottbernstein@gmail.com>; Leonid Levit <levitleonid@gmail.com>

**Subject:** Terminals and Equipment

Can you guys please provide lease pricing on the most popular terminal, POS, mobile swiper and Payment Gateway or virtual terminal you are using

I'm assuming DejaVu, Mint are the terminal and POS but let me know on the others

If you can also send marketing materials and which profile of businesses do the best with each, that would be helpful for our team

--

Thomas Costa

|

631-365-2685 |(646) 847-0370

thomas@unlockedbiz.com

www.unlockedbiz.com

--

unlocked
BUSINESS STRATEGIES
Thomas Costa |
631-365-2685 |(646) 847-0370
thomas@unlockedbiz.com
www.unlockedbiz.com

**4 attachments**


**image001.png**
17K

**POS-Trifold-Email.pdf**
3460K

**TOP10_Email.pdf**
432K

**retail.flyer.pdf**
1213K

# Exhibit F

SWIPE4FREE
NO PROCESSING FEES

## Your Local Processor That Offers the #1 Cash Discount Platform In the Nation

# Top 10 Reasons to Use Cash Discounting

1 **Cash Discounting is fully compliant with federal and state laws**
The Durbin Amendment does not allow any payment card network to inhibit a merchant's ability to implement a cash discount.

2 **The U.S. has the highest interchange rates**
U.S. interchange rates are unregulated, allowing payment card networks (Visa, MasterCard, etc.) to charge what they want. Rates go up April 2019.

3 **Raising your prices costs customers**
It has been proven that raising prices costs far more customers than implementing a cash discount program.

4 **Offset the rising minimum wage rate**
States across the U.S. are raising minimum wage rates, especially in the tri-state area with New York at $15/hour with New Jersey soon to follow.

5 **Customers receive all the benefits from rewards cards**
Cards like Chase Sapphire, Capital One Venture, Citibank Double Cash, & Capital One Savor continue to offer more rewards, costing merchants over 3.5%

 **To avoid annual fees and all other junk fees**
Annual fees are just one example of a junk fee charged by your traditional credit card processor.

**Removing Minimum Credit or Debit Card Signs**
Cash Discounting removes the need to implement a minimum debit or credit card sales signs.

**Stop sending customers to the ATM never to return**
ATM fees are always higher than the 4% Non-Cash Charge. They can go up to $4 for withdrawal plus other penalties charged by their bank.

9

**Offset other constantly growing costs of doing business**
From rising rent to inventory costs, the cost of doing business grows every year for merchants with no relief.

**Customers appreciate having choices**
Customers prefer to have choices, giving the customer the choice to pay in cash and save money is preferred to them having to pay higher prices.

Currently more than 99% of businesses accepting credit cards are on traditional programs. These businesses pay a variety of different daily, monthly, and annual Fees. In addition, they pay a percentage of all sales for the privilege of accepting credit and debit cards as a form of payment. When you add up all the fees and percentages that business owners are forced to pay, it comes out to anywhere from 3% – 4%+ of their gross credit / debit card sales.

**Switch to Swipe4Free today and eliminate your entire credit card processing bill!**

# Exhibit G

# The Solution to All of Your Processing Needs

- Bluetooth / EMV Phone Swipers
- Web Transactions
- Virtual Terminals
- Wireless Terminals
- POS Solutions
- Phone Apps

## Industries Already Using Swipe4Free

Deli & Supermarket

Restaurants

Pizzerias

Bars & Nightclubs

Salons & Spas

Retail

Service Industries

Wholesale

Medical & Legal

WWW.SWIPE4FREE.COM | 1-855-345-0040

# The Guarantee

If at any point you decide that Swipe4Free is not right for your business, we will switch you back to traditional credit card processing at a reduced rate.

"They charge 4% to my customers, so I don't have to pay anything. If a customer purchases $10 worth of goods, I receive $10. This is one amazing service and It's completely free for merchants!"

"Food & labor costs are constantly increasing. Swipe4Free helped me recover those increased costs by eliminating my credit card processing fees."

"Thanks to Swipe4Free. I'm able to manage higher minimum wage laws for my employees."

"My family's cost of living was going up and I needed to increase the amount of money I took home. Swipe4Free allowed me to instantly increase my profits and cover my family's overhead."

SALES REP: ______________________

PHONE NUMBER: ______________________

EMAIL ADDRESS: ______________________

WWW.SWIPE4FREE.COM | 1-855-345-0040

THE #1 CASH DISCOUNT & SURCHARGE PLATFORM

# Stop Giving Away Your Hard Earned Profits to Your Processor

## Eliminate Your Fees Today!

WWW.SWIPE4FREE.COM | 1-855-345-0040

# Aren't You Tired of

- Your processor taking 3% - 4% of your credit / debit card sales
- Increasing credit card rates and junk fees
- Unnecessary miscellaneous fees
- Paying for your customer's incentives - airline miles, cash back, gifts, rewards, and more
- Losing customers because of your credit card minimum signs
- Growing employee minimum wages

# The Solution Has Arrived!

Swipe4Free will increase your profits quickly and easily by eliminating your credit / debit card fees.

- Next Day Funding
- POS Systems for All Business Types
- Tip Enabled
- EBT & EMV Enabled Equipment
- Accepts All Credit / Debit Card Types
- 100% Compliant with All State Laws
- English and Spanish Support Available

# A Brand You Can Trust

With over 10 years in the Credit Card Processing industry and over $4 Billion in Annual Credit Card Processing Volume, Swipe4Free is your best choice.

Join the over 14,000 merchants currently processing with Swipe4Free today!

WWW.SWIPE4FREE.COM | 1-855-345-0040

# How it Works

EXAMPLE: $10.00 Purchase

You enter $10.00 Sale Amount

Terminal Auto Calculates 4% Non-Cash Charge

# How You Benefit

Transaction Process
$10.00 (Sale Amount)
+ 0.40¢(Non-Cash Charge)

You Receive
Full $10.00 Sale Amount

4% (0.40¢ )
Goes to Swipe4free and covers:

- Interchange plus
- Transaction cost
- Authorization cost
- Support

MERCHANT BUSINESS NAME
MERCHANT ADDRESS
DATE TIME
CREDIT SALE:

TRANSACTION# ########
CARD TYPE MASTERCARD
ACCOUNT: ****0000
ENTRY CHIP
AMOUNT: $10.00
NON-CASH CHARGE: $0.40
TOTAL: $10.40
REF NUMBER 12345678
AUTH CODE: 12345678
RESPONSE APPROVAL 123456

MODE
AID
TYR
IAD: 0123456789400000000000000000FF

TSI E00
ARC 00
APPN DEBIT MASTERCARD

I AGREE TO PAY ABOVE TOTAL AMOUNT ACCORDING TO CARD ISSUER AGREEMENT (MERCHANT AGREEMENT IF CREDIT VOUCHER)

X..................................
CARD HOLDER NAME

MERCHANT COPY

THANK YOU!

WWW.SWIPE4FREE.COM | 1-855-345-0040

# What You Get

Swipe4Free provides you with customer facing signage at no extra cost

**DEAR LOYAL CUSTOMERS**

This business has a 4% Cash Discount pre-priced into all items and services. Any purchase made with a credit or debit card will remove the discount and be displayed as a "Non-Cash Charge" on your receipt

**CASH DISCOUNT**

However, this DOES NOT APPLY to customers paying in cash. We thank you for your patronage & continued support!

**IT IS OUR PLEASURE TO SERVE YOU**

For Questions Call 855-345-0040

www.Swipe4Free.com

# Fee Comparison

| Fees | Swipe4Free | Traditional Credit Card Processing |
|---|---|---|
| Interchange Fee | WAIVED | 2-4% of Gross Credit Card Sales Volume* *Varies by business and card type |
| Transaction Fee | WAIVED | $0.05 - $0.25 Per Transaction |
| Authorization Fee | WAIVED | $0.05 - $0.25 Per Transaction |
| Statement Fee | WAIVED | $5.00 - $10.00 Per Month |
| TIN / IRS Fee | WAIVED | $4.95 - $9.99 Per Month |
| Monthly Minimum | WAIVED | $25.00 - $49.99 Per Month |
| Online Access Fee | WAIVED | $3.00 - $15.00 Per Month |
| Express Funding Fee | WAIVED | $9.95 - $19.95 Per Month |
| ALL JUNK FEES | WAIVED | $1.99 - $199.99 Per Month |

WWW.SWIPE4FREE.COM | 1-855-345-0040

# Exhibit H

WOODROW&PELUSO **Taylor Smith <tsmith@woodrowpeluso.com>**

## Leonid Levit / MLL Marketing Inc. - 12 Of X

1 message

**Leonid Levit** <levitleonid@gmail.com> Fri, Jan 15, 2021 at 2:24 PM
To: Taylor Smith <tsmith@woodrowpeluso.com>

---------- Forwarded message ---------
From: <glenn.mondry@swipe4free.com>
Date: Fri, Aug 16, 2019 at 5:32 PM
Subject: Thank you- Swipe4Free/Glenn Mondry
To: Leonid Levit <levitleonid@gmail.com>
Cc: Thomas Costa <thomas@unlockedbiz.com>, Eric Bernstein <ericscottbernstein@gmail.com>, Richie Anthony Regondola <richie@gurland.io>

Greetings All,

I hope all is going well. I have sent over, in series of emails, all marketing materials, Merchant Applications for First Data and TSYS, plus all equipment pricing and information, plus much more. You are all set to begin submitting applications. I am here to assist at any time. I would like to have a date and time though for a virtual training for any of your agents who you feel need it. I can go over the application process, equipment, POS integrations, Cash Discount info, traditional pricing info, and anything else you feel they might need. Just let me know.

Thank you again and I look forward to working with all of you.

**Glenn Mondry| V.P. of Business Development**

**Glenn.Mondry@swipe4free.com**

ISO Support: 888-361-6498| Main Number: 866-811-1005 x179| Mobile Number: 347-385-4161

---

**From:** glenn.mondry@swipe4free.com <glenn.mondry@swipe4free.com>
**Sent:** Monday, August 12, 2019 11:54 AM
**To:** 'Leonid Levit' <levitleonid@gmail.com>
**Cc:** 'Ramon Toribio' <ramon.toribio@merchantindustry.net>; 'Thomas Costa' <thomas@unlockedbiz.com>; 'Eric Bernstein' <ericscottbernstein@gmail.com>; 'Richie Anthony Regondola' <richie@gurland.io>
**Subject:** RE: CRM Emails - Need Logins

Hi Leonid,

Thank you for following up. There isn't an issue with the creating the number of Logins that you need; we will be creating them as each agent submits an application. The agent will then receive an email with login credentials. That is how our system is set-up .

The good news, you are all set to begin submitting applications as of last week.

I am available to assist at any time.

Thank you again.

**Glenn Mondry| V.P. of Business Development**

**Glenn.Mondry@swipe4free.com**

ISO Support: 888-361-6498| Main Number: 866-811-1005 x179| Mobile Number: 347-385-4161

**From:** Leonid Levit <levitleonid@gmail.com>
**Sent:** Monday, August 12, 2019 11:32 AM
**To:** glenn.mondry@swipe4free.com
**Cc:** Ramon Toribio <ramon.toribio@merchantindustry.net>; Thomas Costa <thomas@unlockedbiz.com>; Eric Bernstein <ericscottbernstein@gmail.com>; Richie Anthony Regondola <richie@gurland.io>
**Subject:** Re: CRM Emails - Need Logins

Hey Everyone,

Looping in Richie who is the call center manager here as well to followup on the logins.

Thomas told us there is an issue with creating as many logins as we needed. What is the maximum admin and regular logins you can create for us today so we can get going?

Best,

Leonid Levit

On Fri, Aug 9, 2019 at 10:58 AM Leonid Levit <levitleonid@gmail.com> wrote:

> Hey Everyone,
>
> Just following up on the CRM accesses and if you could send over some terminal training as well or some basic pamphlets we could send out on the subject.
>
> Best,
>
> Leonid Levit
>
> On Wed, Aug 7, 2019 at 3:34 PM <glenn.mondry@swipe4free.com> wrote:
>
>> Thank you, Leonid, for taking care of the last-minute necessities while traveling.  We are building your profile and will have everything, (all CRM Logins including Admin. Logins) set up before the end of this week.
>>
>> I will update everyone once this process is complete.
>>
>> Let me know if you need anything.
>>
>> I look forward to working closely with everyone.
>>
>> Thank you again.
>>
>> **Glenn Mondry| V.P. of Business Development**
>>
>> **Glenn.Mondry@swipe4free.com**
>>
>> ISO Support: 888-361-6498| Main Number: 866-811-1005 x179| Mobile Number: 347-385-4161
>>
>> 
>>



**From:** Leonid Levit <levitleonid@gmail.com>
**Sent:** Tuesday, August 06, 2019 12:46 PM
**To:** glenn.mondry@swipe4free.com
**Cc:** Ramon Toribio <ramon.toribio@merchantindustry.net>; Thomas Costa <thomas@unlockedbiz.com>; Eric Bernstein <ericscottbernstein@gmail.com>
**Subject:** Re: CRM Emails - Need Logins

Hey Everyone,

Unfortunately I am traveling and will only be back in my office August 14th when I can provide a void check, that is the issue. Is there any way around the voided check in the meantime? I can send a miscellaneous wire to your account to show that its a real bank account if you give me your information.

Best,

Leonid Levit

On Tue, Aug 6, 2019 at 12:34 PM <glenn.mondry@swipe4free.com> wrote:

Hi Leonid,

I hope all is well. We are getting ready to enter the list of emails below to create logins for them. The DocuSign that was sent to you has not been fully completed yet. We need a copy of a voided check and we can then create a profile that will allow us to enter and create the logins within the CRM System. We can have these emails entered with logins created within 24 hours after the profile is complete.

Please let me know if a copy of a voided check can be sent over.

Thank you again.

**Glenn Mondry| V.P. of Business Development**

**Glenn.Mondry@swipe4free.com**

ISO Support: 888-361-6498| Main Number: 866-811-1005 x179| Mobile Number: 347-385-4161

| **Merchant Industry** | **Swipe4free** | **First US Funding** | **ISO Access CRM** |
|---|---|---|---|
| 36-36 33rd Street, Ste 206 | 36-36 33rd Street, Ste 206 | 36-36 33rd Street, Ste 206 | 36-36 33rd Street, Ste 206 |
| Long Island City, NY 11106 | Long Island City, NY 11106 | Long Island City, NY 11106 | Long Island City, NY 11106 |
| www.merchantindustry.com | www.swipe4free.com | www.firstusfunding.com | www.isoaccess.com |

**From:** Thomas Costa <thomas@unlockedbiz.com>
**Sent:** Tuesday, August 06, 2019 10:54 AM
**To:** glenn.mondry@swipe4free.com; Ramon Toribio <ramon.toribio@merchantindustry.net>; Eric Bernstein <ericscottbernstein@gmail.com>
**Subject:** Fwd: CRM Emails - Need Logins

See below. Who should we send this request to?

---------- Forwarded message ---------
From: **Leonid Levit** <levitleonid@gmail.com>

Date: Tue, Aug 6, 2019 at 10:45 AM
Subject: CRM Emails - Need Logins
To: Tom Costa <thomas@unlockedbiz.com>, Paul Orena <pvomarketing@gmail.com>, Alex P <alexp@debtrelieflaw.ca>

Hey Guys,

Can you please create logins for the crm for these emails below:

normanericua@gmail.com

nilowilsonsmith@gmail.com

malaquekenny@gmail.com

popsyjeane@gmail.com

anjoe.sycore@gmail.com

liezelpogoy.sycore@gmail.com

laurence.sycore@gmail.com

roseller.sycore@gmail.com

renesuliva.sycore@gmail.com

vanessasegovia.sycore@gmail.com

ahmae.sycore@gmail.com

rolien.sycore@gmail.com

alexandrea.sycore@gmail.com

aries4.sycore@gmail.com

binzar.sycore@gmail.com

opalynamabilis.3s@gmail.com
phoebejoycepareno.3s@gmail.com
maryannsalgados.3s@gmail.com
razelannbadiola.3s@gmail.com
marbejeanarriola.3s@gmail.com

For the two emails below can you create admin logins:

info@gurland.io

mattg@gurland.io

--

**Thomas Costa** |

631-365-2685 |(646) 847-0370

thomas@unlockedbiz.com

www.unlockedbiz.com